[Civ. No. 22031.   Second Dist., Div. Three.   June 4, 1957.]

BUDGET WAY CLEANERS AND LAUNDRY, INC. (a Corporation), Appellant, v. DAVID L. SIMON, Respondent.

DAVID L. SIMON, Respondent, v. BUDGET WAY CLEANERS AND LAUNDRY, INC. (a Corporation), Appellant.

Herbert W. Simmons, Jr., for Appellant.

David Hoffman for Respondent.

VALLÉE, J.—Appeal from a consolidated judgment entered in two actions: one action brought by Budget Way Cleaners and Laundry, Inc., called Budget, is for declaratory relief and a money judgment; the other, brought by Simon, is for a money judgment.

On February 17, 1949, Budget, as lessor, and Simon, as lessee, entered into a lease of a parcel of improved realty at a rental of $100 a month and Simon took possession. Simon in the lease agreed to pay for all public utilities supplied to

the property. On February 26, 1951, Simon, as sublessor, and Budget, as sublessee, entered into a sublease of the property at a rental of $150 a month and Budget took possession. On taking possession Budget made arrangements for public utility services in its own name. No provision was made in the sublease as to who should pay for public utility service. Between February 17, 1949, and March 18, 1955, bills for public utilities service supplied to the property in the amount of $4,239.34 were rendered. Simon did not pay them; Budget did.

In the action for declaratory relief Budget sought a declaration of the rights of the parties with respect to whose obligation it was to pay for the public utilities and a judgment for $4,239.34. In the action for money Simon alleged Budget had not paid rent in the amount of $100. Budget admitted the fact. Budget filed a cross-complaint in the Simon action in the same form as its complaint in the action for declaratory relief. As affirmative defenses to the cross-complaint Simon alleged that at least part of Budget's demand was barred by the statute of limitations; his only obligation under the sublease was to remove certain equipment; after the execution of the sublease Budget paid all utility bills as and when rendered; he only agreed to pay for such utilities as were furnished to the property for his use.[1]

The actions were consolidated. The court found the provision in the lease that Simon should pay for all public utilities supplied the demised premises "was intended to mean, and did mean, that SIMON would pay for all water, power, gas and utility bills rendered for services supplied at SIMON's request and for SIMON's own use. That said provision in said lease was surplusage only, since under the law, if said provision had been left out SIMON would have been obligated to pay such bills anyway"; the sublease contained no covenant on the part of Budget to pay for the public utilities; it was the intention of the parties that the rentals under the lease and sublease would be set off one against the other; Budget never did make a demand on Simon to pay the public utility bills rendered and paid by Budget until April 1954 and the parties never did intend that Simon should pay Budget's bills; Budget is indebted to Simon in

---

[1]The first action filed was by Budget for declaratory relief in the superior court. Later Simon filed the action for rent in the municipal court. Budget filed its cross-complaint in that action. It was transferred to the superior court and the two actions consolidated.

the sum of $100 on account of rent but Budget is entitled to a setoff of $20 for the reasonable cost of removing three fence posts.

The court concluded that Simon was entitled to judgment against Budget for $80; Budget is obligated to pay for all public utilities supplied to the demised premises during such time as it occupies them; Simon is under no obligation to pay for public utilities supplied to the property which he did not order or use; Budget is not entitled to judgment against Simon in any sum. Judgment was rendered accordingly. Budget appeals.

■ It is first asserted that the obligation Simon assumed in the lease to pay for public utilities continued after the execution of the sublease and the taking of possession by Budget. It is argued that since the sublease says it is ''subject'' to the lease, it is subservient thereto and Simon's obligation was not affected. We think the court's construction of the lease and sublease was correct. In the lease Simon obligated himself to pay for public utilities supplied to him. He would have been so obligated had the provision been omitted. No doubt the provision was inserted in the lease to make certain that Budget was not responsible for utilities Simon used while he was in possession. When the sublease was executed Budget took possession, ordered the utilities in its name, and paid for them as bills were rendered. If Simon were compelled to pay for all utilities supplied to Budget, he would be paying for all the latter's utilities regardless of how much it used. Simon had no obligation under either the lease or the sublease to supply Budget with utilities. Budget in making its own arrangements for the supplying of utilities did so as sublessee and not as lessor. As the court found, a reasonable construction of the lease is that it means Simon would pay all utility bills rendered for services supplied at his request and for his own use.

Over Budget's objection Simon's attorney, who drew the sublease, was permitted to testify that in the negotiations for the sublease he talked to Levy, owner of Budget, and to Budget's attorney and that ''I called him [Budget's attorney] and told him that—I recall one clause here that I didn't think it was proper, and I asked Stanley what he thought about it, and he said, 'Look, as long as you and I are in the picture, there will be no problem. Dave [Simon] will get about $50 net a month, and that is it.' And Morris [Levy] was in my office then, and I said, 'Understand, as long as you pay

Dave what he is entitled to under this sublease, and he makes an advancement on the master lease, there will be no problem.' And he said, 'Don't worry. You have known me long enough; there will be no problem. You know me and you know Dave.' '' Also over Budget's objection Simon was permitted to testify to conversations with Levy relative to the terms of the proposed sublease prior to its execution. Budget asserts error. ■ The evidence was not admissible on the theory that it was to explain an ambiguity. The sublease is definite, certain, and unambiguous. Evidence of the circumstances under which an unambiguous contract was made is inadmissible to add to or take away from a writing notwithstanding section 1647 of the Civil Code permitting a reference to such circumstances to explain contracts since sections 1638, 1639 and 1647 must be construed together.[2] (*United Iron Works* v. *Outer Harbor etc. Co.,* 168 Cal. 81, 84-85 [141 P. 917]; *California C. P. Growers* v. *Williams,* 11 Cal.2d 221, 227-228 [78 P.2d 1154]; *Courtright* v. *Dimmick,* 22 Cal.App.2d 68, 70-71 [70 P.2d 269]; *Leonard* v. *Huston,* 122 Cal.App. 541, 548-549 [265 P.2d 566]; *Pinsky* v. *Sloat,* 130 Cal.App.2d 579, 588 [279 P.2d 584].) The evidence was not prejudicial. It was to the same effect as the sublease itself. It did not raise any doubt as to the meaning of the clear terms of the sublease nor did it vary its terms. It did not add anything to or take anything away from it. Nor did it show that the parties meant something other than what they said. The evidence was harmless.

■ Budget contends a condition precedent to its paying rent had not been met. In the sublease Simon agreed to remove certain property including a fence from the demised premises and to waive rent until the property had been removed. Prior to April 1, 1955, he asked Budget for permission to remove the property and said that if any items were left after the work was completed Budget should advise him. Simon removed everything except three steel fence posts. Budget did not advise him the posts had not been removed. The court found the reasonable cost of removing

---

[2]Civil Code, section 1638: ''The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.''

Civil Code, section 1639: ''When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title.''

Civil Code, section 1647: ''A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.''

the posts would not amount to more than $20 and deducted that amount from the rent due Simon. In other words, the court applied the doctrine of substantial performance. (Rest., Contracts, § 275.) The court's solution of the problem was fair and equitable. The point is trivial.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied July 2, 1957, and appellant's petition for a hearing by the Supreme Court was denied July 31, 1957.