[Civ. No. 6380. Fourth Dist. Oct. 7, 1960.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff, v. LOIS J. RICE et al., Defendants; HOKE S. NELMS et al., Appellants; MAURINE B. CRAIG, as Executrix, etc., Respondent.

\*Assigned by Chairman of Judicial Council.

Jacobs, Jacobs, Nelson & Witmer, Otto A. Jacobs and Paul B. Witmer, Jr., for Appellants.

Hansen & Dolle and Hodge L. Dolle for Respondent.

SHEPARD, J.—This is an action for condemnation in fee simple absolute of certain parcels of realty for state highway purposes. Parcel numbered 10 is the only one involved in this appeal. Defendants Hoke S. Nelms and Wilma H. Nelms, his wife, as the fee owners, claimed a value of $90,000 for land and $70,000 for improvements, or a total of $160,000. Alan P. C. Craig (now deceased; Maurine B. Craig, executrix of the will of Alan P. C. Craig, has been substituted as party defendant) claimed a leasehold interest value of $30,000 in the same property, and Bank of America claimed a lien interest. On trial of the main action, an award of $85,000 was made as the fair market value for the whole of said Parcel 10. Bank of America was awarded $10,400 on its lien interest. This is not subject to dispute. The balance of the total sum awarded was ordered distributed to the defendants Nelms and Craig, as their interests might appear.

Under authority of Code of Civil Procedure, section 1246.1, the question of the value of the interests of Nelms and Craig was later tried before the court without a jury, and the judgment thereon awards Craig $17,500 as the fair market value of his leasehold interest in the property; the remaining balance

was awarded to Nelms. Nelms appeal from this final judgment of March 3, 1960, which makes the allocation of the values as between the Nelms and Craig. The appeal makes no mention of the original judgment by which the total award of $85,000 was made. This appeal, therefore, affects only the rights of the Nelms and Craig as to the proper division between them of the total balance of the award after paying the Bank of America its lien interest of $10,400.

From the record before us, it appears that Nelms, as fee owners, under date of September 1, 1950, leased to Craig, as lessee, a portion of the property in question. This lease was denominated "Service Station Lease." For convenience we will hereinafter refer to it as "Lease 1." At about the same time Craig subleased the same property to Nelms under a lease denominated "Service Station Operating Lease," hereinafter called "Lease 2." April 10, 1953, the parties executed a "Lease Extension Agreement," hereinafter called "Lease 3," extending the term of Lease 1. On the same day, April 10, 1953, the parties also executed another lease extension agreement, hereinafter called "Lease 4," extending the term of Lease 2.

In general substance, Lease 1 provides for a term ending August 31, 1955; for a rental of 1½ cents per gallon for gasoline delivered into the tanks on the premises; for the construction on the premises by Craig of the usual service station improvements, including buildings, pumps, tanks and service station equipment; and that Craig shall have the right to assign such lease without Nelms' consent. Lease 3 extended the term of Lease 1 to July 31, 1967; added 70 feet more of width from adjoining lots owned by Nelms; added the name of Craig's wife, Maurine, as a lessee; provided that the improvements will become the property of Nelms at the end of the term of the extension of lease; and added the provision that, in the event of the death of both Craigs, Nelms might acquire immediate title to the improvements and equipment by paying to the estate of the last survivor of Craigs, the sum of $6,500 less $36.12 for each month after April 10, 1953.

In general substance, Lease 2 provided for the operation of the service station by Nelms for the same period named in Lease 1; for the sale of Craig's petroleum products at Craig's listed retail price; for the proper care of the improvements and the diligent operation of the service station by Nelms; for the right of Craig to reenter and repossess the service station and its equipment and payment of $1.00 per month cash

rental from Nelms to Craig; the surrender of the premises and equipment to Craig at the end of the term. Lease 4 extended the term of Lease 2 until July 31, 1967; added the name of Craig's wife, Maurine, as lessor; and provided for automatic termination upon termination of Lease 1.

Stripped of excess verbiage, the effect of these four documents was to give Craig the exclusive right to build and have diligently operated for the sale of his petroleum products, a service station on the land in question, for the period from September 1, 1950, to July 31, 1967, unless sooner terminated by the parties. Craig retained ownership of the improvements and equipment until July 31, 1967, or in the event of the death of both Craigs, the payment by Nelms to the survivor's estate of the sum of $6,500 less $36.12 per month after April 10, 1953; the right in Craig to reenter and repossess the premises in case of breach by Nelms; the right in Craig to assign but Nelms having no right to assign their interest in Leases 2 and 4. The names Nelms and Craig will herein be used in the singular when speaking of the lessor or lessee interest.

Nelms first contend, on the appeal, that Craig had no such leasehold interest as would entitle Craig to compensation in the condemnation proceedings here involved. They contend in this respect that Craig was not a lessee entitled to the use and occupancy of Parcel 10 and therefore did not have ''property'' in the constitutional sense, which would entitle them to compensation in eminent domain proceedings. They appear to arrive at this conclusion by the assumption that Craig, on January 10, 1959 (the date of taking under condemnation), had no immediate possessory interest because Leases 2 and 4 merged the possessory interest in Nelms.

With this contention we cannot agree. Under Leases 2 and 4 Nelms were sublessees of Craig for the purpose of operating the property as such sublessees. (*Budget Way etc. Laundry* v. *Simon,* 151 Cal.App.2d 476, 479 [1] [311 P.2d 591].) While Nelms remained in possession under Lease 2, they were estopped to deny their landlord's title as the original lessor, just as Craig under Lease 1 was estopped to deny the title of Nelms as fee owners. (30 Cal.Jur.2d 222 (85); *Burgess* v. *Rice,* 74 Cal. 590 [16 P. 496]; *Ware* v. *Stafford,* 148 Cal.App. 2d 840, 844 [4] [307 P.2d 950].) There was no privity of estate between Nelms as owners and Nelms as sublessees from Craig. (30 Cal.Jur.2d 389 (245); *Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 244 [8] [73 P.2d 1163]; *Higgins* v. *Monckton,* 28 Cal.App.2d 723, 728-729 [2] [83 P.2d

516]; *Webb* v. *Jones*, 88 Cal.App. 20, 28 [4] [263 P. 538].) Nelms' possession as lessees of Craig was, in law, the possession of Craig. (30 Cal.Jur.2d 225 (89); *Lucas* v. *Richardson*, 68 Cal. 618, 621 [10 P. 183]; *Rosenkranz* v. *Pellin*, 99 Cal. App.2d 650, 652 [1] [222 P.2d 249].) ▆▆ The fact that a sublease exists does not destroy the right of the intermediate lessor to compensation for whatever the fair market value of such lessor's interest may be. (*People* v. *Frahm*, 114 Cal.App. 2d 61 [249 P.2d 588].) ▆▆ Nelms' theory of merger is rendered still more untenable by reason of the fact that Nelms' right of tenure under Lease 2 was distinctly different from their tenure as owners. Nelms' tenure under Lease 2 was defeasible since Craig had certain specialized rights of reentry and repossession for violation of lease, which were not contained on behalf of Nelms in Lease 1. Under Lease 1 Craig had full right to sell and assign to anyone else, without the consent of Nelms. Under Lease 2 Nelms were specifically forbidden to assign without Craig's consent. Further less important differences also appear relating to replacement of obsolete property; payment by Nelms to the estate of the survivor of Craigs for unused value of improvements if both Craigs died prior to 1967; treatment of defaults of both lessees and lessors; and exclusive sale by Nelms of Craig's petroleum products at Craig's posted retail prices.

Next, Nelms contend that there was no competent evidence that Craig's interests in the property, if any, were marketable or had any value whatsoever. Nelms apparently seek to bolster this contention by the further contention that the improvements were not removable at the option of Craig and therefore he had no compensable interest therein, and the further contention that the opinion of Craig's expert witness was improperly admitted because it was not based on comparable leases.

▆▆ It is, of course, recognized as a general rule in most of the jurisdictions of the United States that the lessee is not entitled to be directly compensated "for fixtures or other improvements placed by him upon the condemned premises, if, as against the lessor, he did not have the right to remove such improvements." (3 A.L.R.2d 305.) However, as a coordinate of this rule, it is also recognized in most of the jurisdictions of the United States that "the cost of such improvements may be an element to be considered in determining the value of his leasehold interest." (3 A.L.R.2d 306.) ▆▆ The fair market value of the leasehold interest owned by Craig at the date of

taking is the criterion of damage. (*City of Oakland* v. *Pacific Coast Lumber etc. Co.*, 171 Cal. 392, 400 [153 P. 705] ; *City of Pasadena* v. *Porter*, 201 Cal. 381 [257 P. 526, 53 A.L.R. 679] ; *Sacramento etc. Drainage Dist.* v. *Truslow*, 125 Cal.App.2d 478, 486 [270 P.2d 928, 271 P.2d 930].) ▮ The mere fact that improvements are not severable or reclaimable at the termination of the lease does not nullify lessee's right to recover whatever the fair market value of the leasehold interest might be at the time of taking, and the part of the property consisting of improvements must necessarily be taken into consideration in fixing the value of the use thereof. (*Sacramento etc. Drainage Dist.* v. *Truslow, supra*; 3 A.L.R.2d 306, 307.)

▮ An expert may give the reasons for his opinion both in direct and cross-examination. (Code Civ. Proc., § 1872; *County of Los Angeles* v. *Faus*, 48 Cal.2d 672, 676 [2a] [312 P.2d 680].) ▮ The weight to be given the expert's opinion is largely dependent on the reason for his opinion and unless his opinion is wholly and entirely based on incompetent material, the weight to be given such opinion is a question for the trier of fact, that is, the jury, or if there be no jury, the judge. (*People* v. *O'Connor*, 31 Cal.App.2d 157, 159 [87 P.2d 702] ; *People* ex rel. *Dept. Public Works* v. *Union Machine Co.*, 133 Cal.App.2d 167, 170 [1] [284 P.2d 72].) ▮ The reasons given by the witness have no independent prospective value on the issue of fair market value. They serve only as an aid in judging the proper weight to give the opinion. (*People* ex rel. *Dept. Public Works* v. *Nahabedian*, 171 Cal.App.2d 302, 310 [8] [340 P.2d 1053].)

▮ Whatever error, if any, may have been contained in the form of question finally put to the expert witness was, in part at least, induced by the statement to the court of counsel for Nelms. The witness having already given a complete résumé of the physical and financial background of the property, was finally asked the question as to whether or not he had formed an opinion of the fair market value of Craig's interest on January 10, 1959. Counsel for Nelms then stated:

"MR. JACOBS: If your Honor please, further on that, the form of the question is not correct when he talks about 'the lessee's interest.' His question is the improvements and the marketability of the lease.

THE COURT: I think you should reframe that question.

MR. DOLLE: Q. Will you state your opinion of the fair market value of the lessee's interest comprising the value of the

improvements and the bonus value, if any, of the lease on our legal date of value?"

It is evident from a reading of the entire testimony that the evidence for Craig took into consideration all of the circumstances of the leases in fixing the value. This was denominated a "large" station, having 12 gasoline pumps with an estimated average monthly sale of 23,740 gallons. The unexpired term, the value of the use of the improvements, and the interest of Craig under the lease appear to have all received consideration by the witnesses and the court. The expert witness for Craig stated that in his opinion the fair market value of Craig's interest was $26,300. He estimated the value of the lease without considering the value of the improvements, at $15,450. Expert evidence for Nelms estimated the cost to Craig of installing the equipment at $11,500 with a depreciation up to January 10, 1959, of $2,492.28, or a value as of January 10, 1959, of $9,007.72. He stated the cost figures quoted by him were received from Nelms. Craig, of course, held title to the improvements and equipment defeasible at the end of the term. However, the provision for payment to the estate of the survivor of Craigs of the total undepreciated value of the improvements and equipment was a possible condition precedent to termination. The court found that the fair market value of the leasehold interest of Craig was $17,500. From a reading of the entire evidence, it would appear that the trial court took into consideration all of the elements of damage in their proper perspective. Certainly there was no miscarriage of justice.

Respondent, prior to the hearing of this appeal on its merits, moved for dismissal of the appeal on the ground that appellants received and accepted on February 1, 1960, the $63,112.59 of principal and interest awarded by the judgment here appealed from, and having thus accepted the fruits of the judgment are barred from the prosecution of an appeal therefrom. As was said in *People* ex rel. *Dept. Public Works* v. *Loop*, 161 Cal.App.2d 466, 475 [14] [326 P.2d 902] :

"It is the general rule that a condemnee cannot accept payment of the damages awarded him in a proceeding in eminent domain and yet appeal claiming a larger sum if a reversal of the judgment would entail a general review of the damages de novo."

However, as was said in *Schubert* v. *Reich,* 36 Cal.2d 298, 300 [223 P.2d 242] :

"The rule has no application where the benefits accepted

are such that appellant is admittedly entitled to them or would not be affected or put in jeopardy by the appeal.''

A decision of the question presented by the motion for dismissal of the appeal in this case did, however, require a reading of the entire record and to some extent, a consideration of the merits. It is apparent from an examination of the entire record that on a retrial of the case the evidence might well show and the court might well be convinced that Craig was entitled to a greater proportion of the award than was given in this judgment. If that did happen, appellants here would immediately be confronted with repayment of a portion of the fruits of the judgment that they had already voluntarily received and accepted. Thus, it would seem that the rule on dismissal of appeal might well apply in the case at bar. However, in view of what we have heretofore said on the merits of the cause and the necessary affirmance of the judgment, we find it unnecessary to dwell further on the motion for dismissal.

The motion to dismiss the appeal is denied. The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied November 2, 1960, and appellants' petition for a hearing by the Supreme Court was denied November 30, 1960.