317 P.2d 104]

[Civ. No. 17178.   First Dist., Div. One.   Nov. 5, 1957.]

THE PEOPLE ex rel. Department of Public Works, Respondent, v. JOE THOMAS LUCAS et al., Appellants.

(1)

Gregory S. Stout for Appellants.

Robert E. Reed, Holloway Jones, Jack M. Howard and Thomas F. Vizzard for Respondent.

BRAY, J.—Defendants appeal from a condemnation action judgment in their favor in the sum of $226,000.

### QUESTIONS PRESENTED

1. Was the value of "trade fixtures" included in the judgment?

2. Alleged restriction of cross-examination.

The property condemned is ⅛ acre at Walnut Creek. The main improvements consist of two buildings, serving as automobile agency salesrooms and repair shops and a gasoline station. The balance of the property served as a used car lot and storage space. Affixed in and out of the buildings were

certain special in place improvements used in connection with the businesses on the property. These consisted of a suction fan, underground oil tank, specialized air piping, hoists, underground gasoline tanks, wash rack, special electric wiring, lubrication rack.* Also located on the property in conjunction with its use were site improvements consisting of paving, sidewalks, curbs, wire fences, sign poles, bulkhead and flood lights.† Defendants contend that the most of the items contained in these two groups were "trade fixtures" and personal property and were not included in the judgment. Defendants ask that the judgment be reversed and the case returned to the trial court upon the issue of damages alone and "for clarification of the instant judgment."

1. *The Fixtures.*

We deem it unnecessary to determine whether or not the fixtures were personal property nor to discuss the cases cited by defendants in support of their contention on this subject, for the reason that it clearly appears from the record that the value of these fixtures was an issue in the case, submitted to the jury and included in the verdict and judgment. It is true that the complaint and instructions made no specific reference to fixtures as the property to be taken. However, the verdict, the findings of fact, the judgment in condemnation, and the final order of condemnation, all use the phrase "[the property] and all improvements thereon pertaining to the realty." This is the same language used in section 1248, Code of Civil Procedure, which says the duty of the jury is to ascertain and assess: "The value of the property sought to be condemned, and all improvements thereon pertaining to the realty. . . ." Moreover, the parties at the trial used the word "improvements" as including these fixtures. Plaintiff's counsel in examining its own experts asked many times for a breakdown of the valuation of the various fixtures and site improvements. The direct and cross-examination of the defendants' witnesses also demonstrates that the fixtures and site improvements were valued as part of the real property. Thus defendants' expert witnesses Hamlin and Schreiber put a value on fixtures Number 1 of $5,085 and $6,771.25, respectively. Fixtures Number 2 Hamlin valued at $7,546.75. They

---

*These will be referred to for convenience and without characterizing their legal title, as fixtures Number 1.

†These will be referred to likewise for convenience and without determining their legal title, as fixtures Number 2.

valued each item separately, even to the wood fencing. Defendants' third witness Wallace did not value the fixtures separately but was asked by defendants the value of the "land, buildings, fixed improvements or fixed fixtures and land improvements." Plaintiff's expert witness Gabriel was asked by plaintiff: ". . . have you had occasion to estimate the value of the so-called site improvements, that is, the paving, I mean by that all of the factors that go into that and have you lastly had occasion to estimate the replacement costs of the various fixtures in place, fixtures which constitute a part of the realty here such as the lubrication racks and that type of equipment." On cross-examination of Gabriel defendants asked him "What, Mr. Gabriel, in your opinion, is the replacement costs prior to taking depreciation of the—all of the improvements, fixtures and site improvements on the Lucas property?" Further defendants asked him if in the fixtures which he included in his valuation there were any items that Hamlin included in his "testimony on the fixture items" that Gabriel had not included in his valuation or any that Gabriel included that Hamlin had not.

Plaintiff was examining Simmons, plaintiff's second expert, and asked him as to whether he had made a breakdown between the value of land and improvements. Defendants' counsel interrupted saying "Just the improvements as you usually include the fixtures and all those items?" Then plaintiff's counsel stated "May it be understood when I say 'improvements', I include the physical structures that are the operating buildings on the property, the site improvements in the nature of paving, lighting and so forth, walls, bulkheads, gravel, fencing, lighting, wire fencing, and that in-place equipment would include the hoists and other fixtures particularly adapted and annexed to the realty. Do you have that in mind, Mr. Simmons? THE WITNESS: Yes, I have. Q. (By Mr. Vizzard [plaintiff's counsel]): Now, with that in mind, and your figure incorporating and including those items, would you state the value that you assigned to the various improvements? A. $137,500.00." A little later defendants' counsel stated: "Counsel, I am going to raise one point which may simplify this. I am not going to quarrel with the value of the improvements, fixtures, and so forth, I mean not as a stipulation, but I will not cross-examine on it. I think the witness has been very fair on that item. That may simplify your direct examination."

Thus, it is unimportant whether the fixtures were personalty

or realty. The case was tried and determined upon the theory that their value was included in the valuation given to the jury. Particularly is this so when no evidence was offered from which the jury could have determined which of the items were permanently attached to the ground and therefore might be realty and which were not and might be personalty. Nor was any ruling nor instructions requested of the court upon the subject. ■ Applicable here is the statement in *Howard* v. *Howard,* 128 Cal.App.2d 180, 184 [275 P.2d 88] : "Hence, the rule is applicable which Mr. Justice Spence aptly states in *Miller* v. *Peters,* 37 Cal.2d 89, 93 [230 P.2d 803], thus: '(2) It is settled law that where the parties and the court proceed throughout the trial upon a theory that a certain issue is presented for adjudication, both parties are thereafter estopped from claiming that no such issue was in controversy even though it was not actually raised by the pleadings. [Citations.] . . .' "

While the court did not expressly instruct the jury that it was to consider the value of the fixtures and did instruct on the method of determining the land values, there was nothing in the instructions which intimated to the jury that it was not to consider the evidence on the value of the fixtures nor to value them, and as the parties included "fixtures" in the word "improvements" the jury could only have concluded that the use of that word by the court in its instructions likewise included them.

2. *Restriction of Cross-Examination.*

All experts testified that defendants' land was in a geographical area known as a "strip development" meaning a commercial development that runs along both sides of a major traffic artery. Plaintiff's witnesses placed a lower per square foot value on defendants' land than did defendants' witnesses, and also than defendants' witnesses placed on strip development areas in other places which defendants claimed were comparable to their area, and which plaintiff's witnesses said were not comparable. They also gave other reasons for the lower value they placed on defendants' land. On cross-examination of plaintiff's witness Gabriel defendants asked him if he knew that the State Highway Commission prior to the filing of the complaint had considered two alternate routes of the freeway, one of which would require the taking of defendants' property. The witness said he had read about it. Defendants then asked the witness whether the

possibility that the route selected might be the one requiring defendants' property would affect the development of land on both sides of the street upon which defendants' property is located. The court sustained an objection to the question principally upon the ground that the answer would be a matter of speculation. Defendants' position concerning this question is: "Appellants' position is that by earmarking a general geographical area as the subject of future freeway or highway development, the owners of the land in question as well as prospective purchasers or developers are placed on notice by the State that their individual and particular holdings may be seized. Until the State finally determines the exact site of its route and either acquires by suit or private negotiation the desired and needed land, all owners or users, present or prospective, necessarily should be concerned with the prospective availability of their land to them. In all probability, this situation may tend to depreciate the price to be paid for their property should they elect to sell prior to the finalization of the State's program."

One of the objections to the question was that it assumed facts not in evidence. The court pointed out in sustaining the objection that it did not think the proper foundation had been laid. No offer was made to prove the truth of the facts assumed in the question.

In *Atchison, T. & S. F. Ry. Co.* v. *Southern Pac. Co.*, 13 Cal.App.2d 505, 517 [57 P.2d 575], the court held in determining the market value of land at the time of filing the complaint in December, 1933, it would be speculative to allow evidence that the area was "stigmatized" and the market value of land therein affected by the fact that a Railroad Commission order made in 1927, requiring the construction of a depot which would require the condemnation of the defendant's land. The court said that permitting the examination of witnesses using that order as a basis in order to determine whether there was a market slump in the area during the period between the making of the order and filing suit, and what it was due to, would be indulging in "unfathomable speculation."

In *United States* v. *Certain Lands*, 47 F. Supp. 934, where land was acquired for the expansion of the United States Military Academy at West Point the court said: "It is possible that the long lapse between the time when Congress first publicly evinced an interest in this tract for the uses of the U. S. Military Academy and the commencement of these pro-

ceedings thwarted the efforts of the claimant fully to subdivide the tract and dispose of home sites and recreational facilities. I know, however, of no method of compensating an owner for such consequences of Congressional action. Legislative debates or even unfounded rumors may affect market values favorably or adversely. The owner is entitled to no more than the market value of the property taken regardless of the myriad influences which combine to annex that value to the property.''

■ The scope of cross-examination for the purpose of testing credibility and weight of testimony is extensive so the trial court is given wide discretion in order to keep such examination within reasonable bounds and not have overlong trials. The test on appellate review is not whether a certain question should have been allowed but whether a sufficiently wide range has been allowed to test such credibility and weight of testimony. (*People* v. *La Macchia* (1953), 41 Cal.2d 738, 743 [264 P.2d 15].) ■ In the instant case defendants were given a very wide range of examination on the credibility and weight of the experts' testimony. Defendants were permitted to cross-examine on the disparity between the land values of the experts on each side as well as to show that the state's experts restricted the area upon which they based their valuation. Also the land values of other adjacent ''strip developments'' and the prices paid for land in those areas were testified to by all the witnesses.

It should be noticed that the question merely referred to the effect of the uncertainty of the commission's plans on the ''development'' of property on defendants' street. No question was asked as to the effect on ''market price,'' the subject with which the jury was concerned.

In view of the wide latitude given in cross-examination and the circumstances of the case, we find no error in the sustaining of the objection to this one question.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.