[Civ. No. 23536. Second Dist., Div. One. June 12, 1959.]

THE PEOPLE ex rel. Department of Public Works, Respondent, v. FRED NAHABEDIAN et al., Defendants; LYDIA MASCOTTI, Appellant.

Irl Davis Brett for Appellant.

George C. Hadley, Hugh R. Williams, S. Philip Teresi and Charles E. Spencer, Jr., for Respondent.

WHITE, P. J.—This is a proceeding in eminent domain instituted by the State of California, acting through its Department of Public Works, wherein the latter seeks to acquire the full fee interest in certain parcels of land, including the whole of the improved premises which were owned by appel-

lant, Lydia Mascotti, and which were identified in the pleadings and will hereinafter be referred to as Parcel 3. Respondent, in its complaint alleges "that public interest and necessity require the acquisition of (Parcel 3) for State Highway purposes," and further alleges that Parcel 3 is being taken "for freeway purposes." The evidence disclosed without contradiction that Parcel 3 consisted of three contiguous lots or portions thereof situated on and westerly of the southwest corner of South Broadway and West 17th Streets in Los Angeles, having frontage on the west side of South Broadway of 120 feet. The total parcel consisted of two and a half lots. The easternmost lot, which was the half lot on the corner, was 26 feet in width by 120 feet deep. It was paved and used for parking facilities in conjunction with the use of the commercial structures on the adjacent, contiguous lots immediately west, each of which were 51 by 120. Thus the overall unit was 120 feet by 128 feet or 15,360 square feet. Counting the portion of Lot 7, said Parcel 3 had a total of 15,445 square feet as alleged in the complaint. Lot 8, which was the easterly of the two improved lots, was identified as 138-140 West 17th Street and was a one-story commercial and warehouse brick building having a mezzanine floor in the front. The improvement on Lot 9, which was adjacent, contiguous and immediately to the west of the improvement on Lot 8, was identified as 146 West 17th Street and was improved with a one-story brick commercial and warehouse building. The date of valuation was July 30, 1957. On such date the entire parcel was rented to and occupied by tenants. Although Parcel 3 was consolidated with other parcels in the complaint, the trial which resulted in the judgment upon the verdict which is here being appealed from was limited to the valuation of all of Parcel 3 and the separate valuation of the rights of the County of Los Angeles, as lessee in possession of 140 and 146 West 17th Street, in the total award. Appellant Mascotti testified in her own behalf and adduced the valuation testimony of expert witness, Francis McGarry. The state presented the valuation testimony of expert witness, George Wigmore, and the county adduced the valuation testimony of expert witness, Arthur George Gazdik. In addition, various writings, drawings and photographs were received in evidence. The verdict of the jury fixed the fair market value of the fee in appellant's property as $115,000, which was within the range of the testimony of the expert witnesses' opinions, which range of the experts' opinions was from $106,500, as given by

respondent's witness, and $140,000 as testified to by appellant's witness. A separate verdict denied any apportionment to the county of Los Angeles and judgment was entered upon the verdicts. The county took no further action and the judgment has become final as to it. Appellant's motion for a new trial was denied and from the judgment she prosecutes this appeal.

As her first ground for reversal, it is urged by appellant that the trial court erred in ruling that it would not receive evidence in support of her special defense that the taking by the state was not for public use but was, instead, for a private use. Respondent insists that appellant has not pleaded sufficient facts to set forth the defense that the taking was not for public use. In her answer filed in propria persona, appellant pleaded, "this defendant denies as to Parcel III the allegation that public interest and necessity require the acquisition of Parcel III for freeway purposes, but in truth and fact said property is sought for other purposes. She subsequently filed an amended answer in propria persona, in which she repeated the same allegations.

While conceding that such pleadings were deficient in that they did not allege that the "other purposes" were for *private* as distinguished from *public* use, and did not expressly and formally allege fraud, bad faith or abuse of discretion on the part of the state, appellant urges that nevertheless, the state did not demur or in any other way challenge the sufficiency of the pleading and that the cause was tried upon the theory that appellant was contending that the state was taking Parcel 3 exclusively for a private use. We find ourselves in accord with appellant's contention. It is a time honored rule that where the parties and the court proceed throughout the trial upon a theory that a certain issue is presented for adjudication, the doctrine of estoppel precludes either party from thereafter asserting that no such issue was in controversy, even though it was not actually raised by the pleadings (*Miller* v. *Peters*, 37 Cal.2d 89, 93 [230 P.2d 803] ; *People* v. *Lucas*, 155 Cal.App.2d 1, 5 [317 P.2d 104]).

In the case at bar the issue of whether taking of Parcel 3 was for a public use was presented at the pretrial hearing, wherein, the court's order reads in part:

"As to Parcel No. 3, it is the defendant owners position that the public necessity and convenience does not exist for the taking of said parcel, and that the resolution of condemnation as adopted on behalf of the plaintiff was not duly

adopted. *Said owner contends that only a portion of the property herein sought is required for public purposes, and that the property is not being acquired for freeway purposes as alleged."* (Emphasis added.)

That the issue was presented to the trial judge and by him considered is evidenced by the fact that at the inception of the trial the judge stated:

"Now to get to your contentions in your answer, Mr. Porter (counsel for appellant). See if I state it correctly. That the real purpose of this condemnation proceeding is not to condemn for the purposes of a State highway or a public highway, but to condemn certain portions of your client's land, *the real purpose of which is to lease it for an auto park,* is that a correct statement?" to which appellant's counsel replied, "That is a correct statement . . . ." (Emphasis added.) After further argument between counsel, in the course of which appellant's attorney insisted that Parcel 3 was not being taken for highway purposes, but "just simply to turn it over to Walt's Auto Park . . . without any relation to the highway," and respondent argued that the highway commission's resolution was conclusive upon the court under the provisions of section 103 of the Streets and Highways Code, the trial judge stated:

"Well, I am prepared to stand on the validity of the Statute. That being the case, I will conclude the matter therefore *is not legally raised by the answer,* or a proper answer, because of the way the Statutes, the Condemnation Statute has been written, and that it is not a matter of judicial concern as to the reason, necessity, *or the bona fides, I might say, of the condemnation is not a matter for judicial determination.* In other words, I will stand on the resolution of the condemnation, and when the time comes, then, *so we will know where we stand, I will sustain any objection to the introduction of evidence tending to show what may be, as Mr. Porter thinks, the true purpose of the condemnation proceedings. And there you have an issue for the Appellate Court.* That will be my determination, and I will try to rule to give you a clear issue toward an appellate holding." (Emphasis added.)

To us, it is manifest that the trial court confused "necessity" with "public use." Respondent concedes that ". . . the mere declaration by the legislature of a purpose for which property may be taken for a public use is not conclusive and does not preclude a person whose land is being condemned from showing upon the trial that, *as a matter of fact, the use sought*

*to be subserved is a private one,* or from assailing the complaint on the ground that it so appears therefrom. The character of the use and not its extent, determines the question of public use." (Emphasis added.) (*Stratford Irr. Dist.* v. *Empire Water Co.,* 44 Cal.App.2d 61, 67 [111 P.2d 957]). Yet, in the case at bar, the court announced, ". . . so we will know where we stand, I will sustain any objection to the introduction of evidence tending to show . . . the true purpose of the condemnation proceedings." This was error. There can be no doubt that both the court and counsel for respondent clearly understood that appellant's contention was that the "real purpose" of the condemnor was to take part of appellant's property not for freeway purposes, but to lease it to Walt's Auto Park for private purposes, without any relation to the freeway project. Certainly, if such contentions could be proved, respondent could not acquire the portion of the property in question, because the latter is without authority in law to acquire the property of a citizen for private use (U.S. Const., Fifth and Fourteenth Amendments; Cal. Const., art I, § 14; *People* v. *Chevalier,* *(Cal.App.) 331 P.2d 237; *City & County of San Francisco* v. *Ross,* 44 Cal.2d 52, 59 [279 P.2d 529]).

Respondent argues that the instant action is a taking for the Santa Monica Freeway, which is being built on "stilts" or piers so that it is an elevated freeway. That therefore, the need for a clearance of the surface of the land under the bridge and the approaches to it will serve the public interest. As respondent puts it, *"Not only will it be of 'public utility' to have complete control of the property during construction but it is also obvious that the State must have access to the understructure of the bridge at all times for necessary repairs, maintenance and possible remodeling."* (Emphasis added.) (*Crockett L. & C. Co.* v. *American T. B. Co.,* 211 Cal. 361, 365 [295 P. 328].) Respondent also contends that appellant's argument of the lack of public use due to a future lease for private parking lacks substantiality because of the need for the property during construction, even though the property is later leased or sold to private parties (*Redevelopment Agency* v. *Hayes,* 122 Cal.App.2d 777, 803 [266 P.2d 105]). However, the holding in the case just cited was contingent upon the determination that the taking initially is for a public purpose. In the case at bar, all efforts of appellant to establish that the

---

*A hearing was granted by the Supreme Court on Dec. 18, 1958. The final opinion of that court is reported in 52 Cal.2d 299 [340 P.2d 598].

taking was not for a public purpose were excluded by the trial court. Here, the court seemingly concluded that the question whether the proposed taking is for a public purpose, was committed to the conclusive determination of an administrative agency of the condemning body. Such is not the law (*People* v. *Lagiss,* 160 Cal.App.2d 28, 35 [324 P.2d 926]).

Appellant next contends that the court erred in striking her testimony as to asking prices for comparable properties.

In this regard, the record reflects that appellant had qualified to give her opinion as to the value of Parcel 3 in her capacity as owner thereof. She had testified that the value of Parcel 3, as of the date of valuation was $250,000. To support her testimony concerning the value of her property, appellant testified as to the investigation and inquiry she made as to the "asking" prices of comparable properties, by contacting various owners and real estate brokers with a regard thereto. Such testimony was admitted over objection by respondent but was later stricken by the court on the ground that no foundation was laid to show comparability and because the inquiries made by appellant were not as to "sales" but only as to "asking" prices.

Appellant challenges the ruling on the ground that having given her owner's opinion as to value, she was entitled to give the reasons upon which she predicated such value.

It is undoubtedly the law that an owner should be permitted to state the reasons for his opinion on market value (Code Civ. Proc., § 1872; *Long Beach City H. S. Dist.* v. *Stewart,* 30 Cal.2d 763, 772, 773 [185 P.2d 585, 173 A.L.R. 249]), for as stated in the case just cited, page 773, "It is a general rule that an opinion is worth no more than the reasons upon which it is based." However, "In stating his opinion as to the value of property, the owner is bound by the same rules of admissibility of evidence as is any other witness" (*People* v. *La Macchia,* 41 Cal.2d 738, 747 [264 P.2d 15]).

Appellant's testimony concerned her inquiry as to the "asking" prices of comparable properties. As stated in *Sacramento & San Joaquin Drainage Dist.* v. *Jarvis,* 51 Cal. 2d 799, 804 [336 P.2d 530], "The rule is settled that in a condemnation proceeding a witness cannot state his *opinion* of the value of neighboring land. . . . 'The rule has been held very strictly that the opinion of experts as to the value of other lands is not to be received.' . . . However, he may give evidence of the prices paid for similar property in the vicinity

310

of the land condemned (*County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 676 [2a] [312 P.2d 680]'' (emphasis by the court).

As stated by respondent, ''The estimate of an owner or expert of the market value of the subject property is substantiated or checked by the objective evidence of sales of other property. The sales are the objective evidence. An *opinion* of the market value of *another* piece of property, even if the property is comparable, sheds no light on the market value of the subject property. It is merely an opinion to substantiate another opinion. It may well be only wishful thinking where stated by an owner not under oath. If the one expressing the opinion is qualified to testify in court as to his opinion then the only opinion he should give is his estimate of the market value of the *subject* property and not as to another property. Then he may substantiate his opinion with his experience, *sales* of other comparable property and other objective evidence. The jury would then have a chance to observe the manner of the testimony and whatever facts he has to back his opinion and properly weigh the value of the testimony.

''In the instant case the portions of the defendant's testimony which the Trial Court struck went even further than the opinion evidence. It was not made clear whether the property owners and real estate salesmen gave prices that they would be willing to sell their property for, if anyone would pay it, or whether it was their opinion of what their property would sell for—their opinion of market value of their property. If the 'asking' figure was their opinion of fair market value then the testimony of the defendant was an attempt to get an 'expert's' opinion before the jury without first qualifying him and without an opportunity to cross-examine. The State's objections that such testimony was hearsay was well taken.''

 It must be remembered that the facts stated as reasons for the opinion of the witness do not become evidence in the sense that they have independent probative value upon the issue as to market value. On the contrary, they serve only to reinforce the judgment of the witness, that is, they go to the weight to be accorded his opinion (*Long Beach City H. S. Dist.* v. *Stewart, supra,* p. 773). Consequently, as said in *People* v. *La Macchia, supra,* page 745, quoting from *Peirson* v. *Boston El. R. Co.,* 191 Mass. 223 [77 N.E. 769]: '' '[T]here is no right to put in evidence of matters which

are incompetent as substantive evidence for the purpose of fortifying the opinion of an expert witness, even though they are offered under the guise of the reasons for his opinion, and even though they might properly have been admitted on cross-examination to test and diminish the weight to be given to his opinion.' (Pp. 233-234.) The rule is similarly expressed in *United States* v. *25.406 Acres of Land,* 172 F.2d 990, 993, and Nichols states it in substantially the same language. (5 Nichols on Eminent Domain (3d ed.) § 18.45 (1), p. 181.)

 *"The general rule which permits a witness to state the reasons upon which his opinion is premised may not be used as a vehicle to bring before the jury incompetent evidence.* To so open up the inquiry would create a disastrous break in the dike which stands against a flood of interminable investigation."* (Emphasis added.) (See also *Sharp* v. *United States,* 191 U.S. 341, 348 [24 S.Ct. 114, 48 L.Ed. 211].)

 It is important to remember that in the case of *County of Los Angeles* v. *Faus, supra,* the court was dealing only with comparable *sales* prices and *not with "asking prices" or offers.* And, subsequent to the case just cited, section 1845.5 was added to the Code of Civil Procedure by the Legislature, which provides that a witness may testify to his knowledge of *sales* prices in establishing his qualifications. We are therefore persuaded that the trial court did not err in striking the aforesaid testimony of appellant.

 Appellant next asserts that the court erred in allowing respondent to introduce evidence of noncomparable transactions. The challenged testimony came into the record during the testimony of George Wigmore, an appraiser of property for some 25 years, and who testified as an expert witness for respondent condemnor. As heretofore noted, the subject property is located at South Broadway and 17th Street in the city of Los Angeles. The witness testified as to *sales* made of property located along Grand Avenue, Hope, Flower and Figueroa Streets, some two to four blocks west of appellant's property but, like hers, situated between Pico and Washington Boulevards. It is appellant's contention that the trial court and this court should take judicial notice that the development and character of improvements along South Broadway, South Main and Hill Streets between Pico and Washington Boulevards is entirely different from the development and character of improvements along the streets testified to by respondent's expert, though located between the same east and west thoroughfares as is appellant's property (*Varcoe*

v. *Lee,* 180 Cal. 338, 343 [181 P. 223]). That therefore, the trial court erred in permitting respondent to place in evidence sales in what the court should have judicially noticed as being "wholly non-comparable areas." However, appellant overlooks the fact that matters of which courts have judicial knowledge are uniform and fixed, and do not depend upon uncertain testimony. That as soon as a circumstance becomes disputable, it ceases to fall under the head of common knowledge, and so will not be judicially recognized. As was said in *Varcoe* v. *Lee, supra,* page 345: " 'A matter properly a subject of judicial notice must be "known," that is, well established and authoritatively settled, not doubtful or uncertain.' "

 The area which appellant contends to be noncomparable is at least debatably comparable. As pointed out by respondent, "This is particularly true when it is noted that the property of the defendant fronts on 17th Street and that the only entrance is on 17th Street. Furthermore, the buildings are of the warehouse type and it was expert witness Wigmore's contention that the existing buildings were the highest and best use of the property. The properties used by expert witness Wigmore as comparable property were such as to require the same type of use as the subject property."

Furthermore, the testimony was introduced as part of the investigation of the expert witness, and to establish his qualifications and pursuant to Code of Civil Procedure, section 1845.5, he was permitted to testify as to sales prices. While some of the testimony of this witness was subject to objection, none was made thereto at the trial and cannot be raised for the first time on appeal. In any event, had proper objections been made to vulnerable parts of the testimony, and sustained, there would yet remain admissible testimony as to five sales.

Although the judgment must be reversed we have, pursuant to section 53 of the Code of Civil Procedure, considered and determined all the questions of law presented upon this appeal and necessary to the final determination of the case.

The judgment is reversed and the cause remanded for a new trial.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied July 8, 1959.