[Civ. No. 25919. Second Dist., Div. Two. Aug. 16, 1962.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. LYDIA MAS-COTTI, Defendant and Appellant.

Irl Davis Brett for Defendant and Appellant.

George C. Hadley, S. Philip Teresi, Charles E. Spencer, Jr., and Robert E. Reed for Plaintiff and Respondent.

ASHBURN, J.—Condemnation in fee for construction of Santa Monica Freeway. Defendant Lydia Mascotti is owner of property designated as Parcel 3 in the complaint. She appeals from the interlocutory and final judgments rendered after a third trial of the case as to her parcel.

The action was filed and summons issued on July 30, 1957, and the first trial was had within one year from that date, hence the valuation date used in said trial was the date of filing. Defendant's answer, filed in propria persona, raised the issue of a taking for private use, did so in such manner that the judge and counsel understood her contention and tried the case upon the theory that she was claiming that the State was taking part of her Parcel 3 exclusively for private use, namely, leasing a portion of the condemned

parcel to a private person for an auto park. She was represented by counsel at the trial. The court sustained objections to defendant's proffered evidence in support of her plea, holding that the resolution of the California Highway Commission authorizing the condemnation was conclusive and the trial of the issue of private use was thereby precluded.

Defendant Mascotti appealed and the judgment was reversed in *People* v. *Nahabedian,* 171 Cal.App.2d 302 [340 P.2d 1053], because of error in refusing to try said issue of private use. The opinion, authored by Mr. Presiding Justice White, says in part: "To us, it is manifest that the trial court confused 'necessity' with 'public use.' Respondent concedes that '. . . the mere declaration by the legislature of a purpose for which property may be taken for a public use is not conclusive and does not preclude a person whose land is being condemned from showing upon the trial that, *as a matter of fact, the use sought to be subserved is a private one,* or from assailing the complaint on the ground that it so appears therefrom. The character of the use and not its extent, determines the question of public use.' (Emphasis added.) [Citation.] Yet, in the case at bar, the court announced, '. . . so we will know where we stand, I will sustain any objection to the introduction of evidence tending to show . . . the true purpose of the condemnation proceedings.' This was error. There can be no doubt that both the court and counsel for respondent clearly understood that appellant's contention was that the 'real purpose' of the condemnor was to take part of appellant's property not for freeway purposes, but to lease it to Walt's Auto Park for private purposes, without any relation to the freeway project. Certainly, if such contentions could be proved, respondent could not acquire the portion of the property in question, because the latter is without authority in law to acquire the property of a citizen for private use [citations]." (P. 307.) Also: "In the case at bar, all efforts of appellant to establish that the taking was not for a public purpose were excluded by the trial court. Here, the court seemingly concluded that the question whether the proposed taking is for a public purpose, was committed to the conclusive determination of an administrative agency of the condemning body. Such is not the law (*People* v. *Lagiss,* 160 Cal.App.2d 28, 35 [324 P.2d 926])."[1] (P. 308.) The judgment was

---

[1]The cited case of *People* v. *Lagiss,* 160 Cal.App.2d 28, 35 [324 P.2d 926], was later disapproved in *People* v. *Chevalier,* 52 Cal.2d 299, 305-

reversed and the cause remanded for a new trial. No petition for hearing in the Supreme Court was filed and this decision presumptively became the law of the case to be followed in all subsequent proceedings by both trial and appellate courts (*Central Sav. Bank of Oakland* v. *Lake,* 201 Cal. 438, 443 [257 P. 521]; 4 Cal.Jur.2d § 685, p. 591).

■ The reversal was in this form: ''The judgment is reversed and the cause remanded for a new trial''; this was general and opened all issues for retrial. (4 Cal.Jur.2d § 666, p. 551.)

Before the second trial defendant, through an attorney, filed a second amended and supplemental answer alleging that the north half of her property was being taken for private use and that the commission was abusing its discretion and acting in bad faith. The case came on for a second trial on April 13, 1960. A division of this court had decided on April 7, 1960, *People* v. *Murata* (Cal.App.) 4 Cal.Rptr. 45, holding that, after reversal of the judgment rendered on the first trial

---

307 [340 P.2d 598]. The District Court of Appeal in *Nahabedian* also relied upon a decision of the District Court of Appeal in *People* v. *Chevalier,* (Cal.App.) 331 P.2d 237, but the Supreme Court took that case over. A footnote on page 308 of 171 Cal.App.2d reads: ''A hearing was granted by the Supreme Court on Dec. 18, 1958. The final opinion of that court is reported in 52 Cal.2d 299 [340 P.2d 598].'' In that final decision it is said: ''It is further clear that since 1913, our statutory provisions (Code Civ. Proc., § 1241, subd. 2; see also Sts. & Hy. Code, § 103) have placed the determination of the question of 'necessity' within the exclusive province of the condemning body by expressly declaring that the latter's determination of 'necessity' shall be 'conclusive evidence' thereof. We therefore hold, despite the implications to the contrary in some of the cases, that the conclusive effect accorded by the Legislature to the condemning body's findings of necessity cannot be affected by allegations that such findings were made as the result of fraud, bad faith, or abuse of discretion. In other words, the questions of the necessity for making a given public improvement, the necessity for adopting a particular plan therefor, or the necessity for taking particular property, rather than other property, for the purpose of accomplishing such public improvement, cannot be made justiciable issues even though fraud, bad faith, or abuse of discretion may be alleged in connection with the condemning body's determination of such necessity. . . . Any language in the prior cases implying a contrary rule is hereby disapproved. It follows that there was no error in the trial court's ruling striking the 'special defenses' relating to the question of necessity.'' (Pp. 306-307.) To the same effect see *County of San Mateo* v. *Bartole,* 184 Cal. App.2d 422, 433 [7 Cal.Rptr. 569]; *People* v. *City of Los Angeles,* 179 Cal.App.2d 558, 568 [4 Cal.Rptr. 531]; *Barry* v. *Department of Public Works,* 199 Cal.App.2d 359, 361-362 [18 Cal.Rptr. 637]. The decision in *People* v. *Nahabedian* (this case) seems to be erroneous in the light of subsequent events. But it was properly treated as the law of the case throughout the second trial.

the valuation date would be that of the beginning of the new trial if more than one year after issuance of summons. During this second trial it developed that the Supreme Court had taken the *Murata* case over and the trial judge naturally was in a dilemma. He withheld the decision as long as he felt justified in doing, and finally applied the *Murata* rule, rendering judgment on May 16, 1960. The judge granted a new trial on July 14, 1960, in these words: "Plaintiff's motion for a new trial heretofore submitted June 22, 1960, is granted on the grounds of insufficiency of the evidence to sustain the verdict." The Supreme Court decided the *Murata* case on December 13, 1960, and held that the date of summons was the proper valuation date, not that of the second trial. (*People* v. *Murata*, 55 Cal.2d 1, 7 [9 Cal.Rptr. 601, 357 P.2d 833].) Counsel discuss at some length the effect of this new trial order.

The notice of motion was that of the People and sought a new trial "upon the issue of the compensation awarded for the taking of Parcel 3" upon the grounds of excessive damages, insufficiency of the evidence, verdict against law and error in law occurring at the trial. It is now contended by respondent that this was a motion for retrial of a single issue and the judge could not go beyond the motion—specifically that he could not grant a new trial generally. ▮ The rule is that the court is confined to the scope of the notice in granting a new trial (*Van Ostrum* v. *State of California,* 148 Cal.App.2d 1, 4 [306 P.2d 44]; *O'Malley* v. *Carrick,* 60 Cal.App. 48, 51-52 [212 P. 45]; *Lovett* v. *Dintzer,* 131 Cal.App.2d 165, 166 [280 P.2d 58]), but that is not a universal rule. ▮ The court can grant a new trial limited to a certain issue or issues when separable. *Hamasaki* v. *Flotho,* 39 Cal.2d 602, 608 [248 P.2d 910]: "The only appeal before us is that from the order granting plaintiffs' motion for a limited new trial. In disposing of this appeal we have jurisdiction to do no more than the trial court itself could have done. . . . The controlling question, therefore, is whether or not the trial court, on plaintiffs' motion for a new trial on the issue of damages only, had power to grant a new trial on all issues.

"This question is analogous to that presented when an appeal is taken from only a part of a judgment. To simplify litigation a party who is aggrieved by a judgment is ordinarily entitled to limit his appeal to the parts thereof with which he is dissatisfied. ▮ ▮ Similarly, when he is seeking relief

in the trial court by way of a new trial, he ordinarily may seek a retrial only of the issues on which the decision has been adverse to him. In either case, however, situations may arise where the issues are so interwoven that a partial retrial would be unfair to the other party. When, as in the present case, for instance, the jury has, by compromising the issues of liability and damages, inextricably interwoven those issues, a retrial of the damages issue alone based on the erroneous assumption that defendant's liability has been determined would be extremely unjust to him. A situation is thus presented where the plaintiff has been aggrieved, but the specific relief he seeks may not be granted without doing an injustice to the defendant. Since the relief requested may not be granted, the trial court, if the issue is presented by motion for a limited new trial, or the appellate court, if the issue is presented by a partial appeal, must do one of two things. It must either deny all relief, or order a new trial on both issues. In the case of partial appeals it is settled that the court may review as much of the judgment as is necessary to give the appellant the relief he seeks even though it is necessary to reverse parts of the judgment with which he has no quarrel and from which neither party has appealed. . . . Logically the same rule should govern the trial court when passing on a motion for a limited new trial.''

As pointed out in *Hamasaki, supra,* this rule pertaining to new trials is but the counterpart of the one governing appeal from a portion of a judgment. That can be done properly only when the issue is clearly severable and if attempted in disregard of this rule may result in a review of the entire judgment. (See *M. H. Golden Constr. Co.* v. *El Centro Properties,* 112 Cal.App.2d 435, 440 [246 P.2d 942]; *Remy* v. *Exley Produce Express, Inc.,* 148 Cal.App.2d 550, 557 [307 P.2d 65]; 3 Cal.Jur.2d § 46, p. 474.) Severability exists only when the portion selected for appeal can be reversed without affecting other portions of the judgment. *American Enterprise, Inc.* v. *Van Winkle,* 39 Cal.2d 210, 217 [246 P.2d 935]: ''The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked. [Citations.] '[I]n order to be severable, and therefore appealable, any determination of the issues so

settled by the judgment . . . must not affect the determination of the remaining issues whether such judgment on appeal is reversed or affirmed. . . . Perhaps another way of saying it would be that the judgment is severable when the original determination of those issues by the trial court and reflected in the judgment or any determination which could be made as the result of an appeal cannot affect the determination of the remaining issues of the suit. . . .' (*Attorney General* v. *Pomeroy*, 93 Utah 426 [73 P.2d 1277, 1294, 114 A.L.R. 726].)''

██ The question of whether the order granting the new trial was general or limited to the issue of compensation as requested by plaintiff turns upon the problem of severability of the issues. Both the question of a taking for private use and that of compensation for the taking were canvassed at this second trial and the court made this finding: "The court finds that the use and purposes for which said parcel of real property is sought to be condemned is a public use authorized by law, to wit, for a State highway for freeway purposes, and that the taking of said real property in fee simple absolute for said purposes was and is necessary to such public use and purposes." Both questions, extent of taking and compensation to be made, were tried and decided, one by the judge and the other by the jury. ██ The issue of public use had been decided by the judge and there were no circumstances present (such as a compromise verdict of a jury) to indicate that a partial retrial would be unfair to the opposing party. It having been thus determined that all of appellant's property was being taken for public use, the question of compensation became a severable one, just like the issues of liability and damages in the ordinary personal injury case. The plaintiff having asked for a new trial limited to compensation and defendant having made no motion for a new trial, the court granted "plaintiff's motion" on the ground of insufficiency of the evidence. The judge, following the opinion of the District Court of Appeal in *People* v. *Murata, supra,* (Cal.App.) 4 Cal.Rptr. 45, had adopted the date of the second trial as the valuation date. As he was confronted with the fact that the Supreme Court had taken over the *Murata* case it is fair to assume that he concluded he had applied the wrong valuation date and that that issue should be retried. We find in the record no persuasive reason for him to grant a new trial generally, so we hold that this was an

order granting a limited new trial on the issue of compensation.

At the third trial, beginning on January 24, 1961, the trial judge ruled: "I find by going through this file that Judge Crum made a written finding on the issue of public use, and the motion for a new trial was made on the issue of evaluation, compensation. So it will be the ruling of this Court that insofar as no motion for a new trial or appeal was made on the issue of public use, that that is now final and that the motion for new trial on compensation and evaluation was confined to that issue only. The Court will further find, in accordance with the *Murata* case, that the correct date of evaluation for us to consider at this time will be the date of issuance of the original summons." Judge Sheldon did not err in adopting July 30, 1957, as the valuation date. The law was established to that effect by the Supreme Court's decision in the *Murata* case. True, the findings made upon the second trial declare April 13, 1960, to be the correct valuation date, but that finding was vacated by the order granting a new trial upon the issue of compensation and the question was thus thrown open.

The judgments are affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a rehearing was denied September 13, 1962, and the following opinion was then rendered:

ASHBURN, J.—Appellant's petition for rehearing raises for the first time the claim that "the *Sheldon* judgment is erroneous in that it violates the constitutional provisions requiring payment of just compensation," because "it purports to limit interest upon the principal award to the date of *entry* of the SHELDON judgment [R. 60] as distinct from the date of payment to or deposit for the appellant 'without strings' so that she could receive it without waiving her right to appeal upon the grounds heretofore appealed from."

The point must be deemed waived by failure to present it in the briefs. "Counsel are not permitted to argue their cases in a piecemeal fashion and points not previously argued will not be considered where raised for the first time on petition for rehearing. (*Epperson* v. *Rosemond,* 100 Cal. App.2d 344, 348 [223 P.2d 655, 224 P.2d 480] ; 4 Cal.Jur.2d

Appeal and Error, § 522, p. 365.)'' (*Smith* v. *Crocker First Nat. Bank*, 152 Cal.App.2d 832, 837 [314 P.2d 237].) ''No such point was suggested in the argument on which the petitioners submitted the case for decision. It is the settled rule of this court that points made for the first time on petition for rehearing will not be considered.'' (*A. F. Estabrook Co.* v. *Industrial Acc. Com.*, 177 Cal. 767, 771 [177 P. 848].)

Petition for rehearing denied.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 10, 1962.