[Civ. No. 21048. First Dist., Div. One. Oct. 16, 1963.]

CITY OF GILROY, Plaintiff and Appellant, v. ANGELINA FILICE, Defendant and Respondent.

Sydney S. Johnson, Franklin A. Dill and William B. Boone for Plaintiff and Appellant.

Boccardo, Blum, Lull, Niland, Teerlink & Bell and John W. McDonald for Defendant and Respondent.

SULLIVAN, J.—Plaintiff, City of Gilroy, appeals from a judgment in defendant's favor in the sum of $1,155, entered after a nonjury trial, in an action in eminent domain brought to condemn an easement and right-of-way for the construction, maintenance, repair and replacement of an underground sanitary sewer.

Defendant's entire property is a 27-acre prune orchard operated by the defendant Angelina Filice and her two sons. The easement sought to be acquired by plaintiff runs along the northerly boundary of the property and consists of a strip 15 feet wide by 770 feet long, containing approximately .265 acres. At the commencement of the instant proceedings, the above strip of land included in the proposed sewer easement was already subject to a road easement in favor of the Santa Clara County Flood Control and Water Conservation District for ingress and egress for the construction, operation and maintenance of a storm drainage facility on contiguous property. The above flood control district consented in writing to plaintiff's use of the surface of said strip of land for the purpose of laying and maintaining plaintiff's sewer pipeline. Plaintiff, on its part, did not seek by its proceedings in eminent domain, to condemn any interest or right of the flood control district in the strip of land here involved.

The entire sewer line is approximately 15,000 feet long, running from the City of Gilroy through various properties, including that of the defendant, to a terminus outside the city limits. The 770-foot section through defendant's land was already constructed and in place at the time of trial. Generally speaking, it runs down the middle of the flood control district's road easement. It is laid 9 or 10 feet below the surface of the ground and has three manholes along this part of the line which the parties stipulated would be lowered by plaintiff so as to be flush with or even below the surface of the ground. It is to be noted then that defendant's orchard stopped at the inside boundary of the strip of land constituting the road easement. The parties agree that there could be no building or cultivation on the easement itself, although this area was available to defendant for turning any farming equipment used in the orchard.

Ernest Filice, defendant's son, was the sole witness called by the defendant. He was not qualified as an expert appraiser of real property and, technically, was not a coowner of the property in controversy. Nevertheless, the record discloses that he gave testimony as to the value of the easement in much the same way as an owner would. This appears to have been offered because of his intimate knowledge of the Filice ranch over many years and of his having been engaged in operating it along with his mother and brother. At any rate, his testimony was received without any objection on plaintiff's part that the witness was not qualified and that therefore his opinion was not competent evidence. Indeed plaintiff has raised no direct objection before us on this point. Nor could plaintiff do so, having failed to object in the court below. (3 Cal.Jur.2d 634-636.) We therefore propose to consider Mr. Filice's opinion evidence as if it were given by an owner of the property.

▮▮▮ This witness, after briefly recounting his familiarity with the orchard and with the sewer line, which he had seen constructed, testified as follows on direct examination: "Q. . . . Mr. Filice, do you have an opinion of the fair market value of the property which is being taken in this proceeding, that is, the sewer easement being taken by the City of Gilroy, as of June 21, 1961? A. Yes, sir, I have. Q. And what is your opinion of the fair market value of that? A. Well, we feel it is — it is worth at least $2250 or $3 a foot for the easement."

He was then asked to state his reasons for his opinion on

the value of the easement and testified: ''Well, it has many. I'd say first, any time you give an easement on any property, why, from then on it is a mark against your — the deed, or if it goes for any sale, the easement is looked down on. It creates people traversing the property, in and out. There is always people using the property, creating dust or damaging crops. And the easement will be from now on, for eternity. We can't back out; once you give an easement, it is forever. And there will always be people going over this easement, which borders the orchard, and there will be prunes on the ground, and I know that prunes will be stepped on, damaged, and there will be dust hazards, damaging the prune blossoms. We can't be there at all times to see that the people don't fly through the property and go at a reasonable rate of speed. Well, it is — it is a nuisance from now on. There will be garbage dumped there, because we have no right to tell people not to go on that easement. It is — oh, I probably can't think of them all, but there will be many reasons why — why we don't feel that it should be there.''

The parties in their briefs have proposed different summaries of the witness' reasons which are obviously somewhat repetitious and overlapping. We feel that they may be fairly reduced to the following: (1) The easement is a mark against the property, thereby affecting its sale; (2) the construction and maintenance of the sewer line create traffic; (3) people using the easement will create dust damaging the prune blossoms; (4) people using the easement will damage the crops as for example by stepping on the prunes lying on the easement; (5) the easement is perpetual; and (6) there will be garbage dumped there.

Upon the conclusion by the witness of the foregoing statement of his reasons, plaintiff's counsel moved to strike ''portions of that answer of the witness on the grounds that it is incompetent, irrelevant and immaterial, not proper grounds or bases for determining value in a condemnation suit, and are highly speculative.'' Plaintiff urged ''that the whole testimony on the reasons here should be stricken, and if the Court feels that there might be some portion of that, that is proper then, of course, that would be left in, ...'' After argument on the motion the court indicated that it would not strike all of the witness' answer but would strike those portions ''about creating dust ... and any other nuisance like dumping garbage on the property, that cannot be considered in this action. That is something that will have to be taken up at a later time.'' There were then received in evidence

certain photographs of the area taken by the witness which showed that defendant's orchard bordered the easement. By reference to these exhibits, the witness explained that the prunes from the trees close to the easement dropped into the roadway area and that any trucks traversing the right-of-way in connection with the construction or maintenance of the sewer line would be likely to run over the prunes which were on the ground.

On cross-examination, Filice testified that he could not state what portion of his $2,250 figure on the value of the easement he had assigned to prune damage or how much of it, in dollars and cents, he had allocated to any of the reasons given by him for his opinion on value.[1] At the conclusion of the recross-examination, plaintiff's counsel renewed his motion "to strike the entire testimony of the witness as to value, on the ground he has been unable to tell us how much of that $2,250 he attributes to factors that the Court has allowed in as being competent, and how much he has attributed to speculative and conjectural factors, and as a result his opinion of value is so permeated by this speculation, conjecture and incompetent factors, that the whole thing should go out." Excepting as to those portions of the valuation evidence which the court had previously indicated during the direct examination it would strike, the court denied the motion.[2] Defendant then rested. Plaintiff thereupon moved that judgment be entered awarding nominal damages. Such motion was denied.

Plaintiff presented its valuation evidence through Mr. Rufner, an expert appraiser. Rufner testified that since the property was already encumbered by a road easement in

[1]Counsel for plaintiff apparently attempted to ascertain to what extent, if any, the witness' opinion had been modified by the court's ruling striking some of the reasons given in support of the opinion. In the course of questions directed to the amount assigned to dust damage (actually stricken by the court), the following colloquy occurred: "MR. DILL: But there are four or five of his alleged reasons that the Court has stricken. Now, I want to find out after we take these out how much do we have left. THE COURT: If you are going to cross examine the witness along that line, we are going to be here all day. Now, I know what is immaterial, what is not material. I have already ruled on that, so I don't think it is necessary to press the question any further."

[2]The court stated that Filice's "opinion can be considered by the Court, and the Court can consider the reasons given for it, so I don't think that you can strike out the whole answer. I am going to let part of the answer stand."

favor of the flood control district, no loss in value resulted because of the sewer line; that the 15-foot strip of land was practically valueless when the roadway easement was placed on it; that there was no impairment in the use of such strip of land; that the balance of the ownership, that is the orchard as a whole, would be more valuable by placing the sewer in the 15-foot strip in the event that the Filice property, which was close to city limits, was subdivided for residential purposes; and that the damages resulting from the taking of the easement were only nominal for which customarily the sum of $1.00 was assigned.

It is to be noted that prior to trial defendant waived all claims to severance damages. It is also to be noted that no view of the property was taken by the trial judge. The trial court found, so far as is here pertinent, that the value of the easement and right-of-way condemned in the instant proceedings was $1,155 and rendered judgment accordingly. In announcing judgment at the close of the trial, the court observed that the defendant was not entitled to the sum of $2,250 (the amount testified to by Filice) but stated that the 770-foot easement was ''worth a $1.50 a foot.''

Preliminarily we feel it is necessary to make certain observations concerning the measure of compensation to be applied in the instant case and the method pursued by defendant in her valuation of the property interest sought to be condemned. Crucial in the situation before us is the factor that plaintiff by its proceedings in eminent domain is attempting to impose an easement on land already subject to an easement. We have pointed out that both easements cover the same strip of land. ■ While there is a dearth of California precedent precisely in point, respectable authority supports the rule that where an easement is imposed on land already burdened with an existing easement, the owner of the fee is entitled to compensation represented by the difference in the value of the land before and after the imposition of the second easement. If no substantial difference in value is shown, the compensation or damage is nominal. (4 Nichols on Eminent Domain (1962) 286-287; *Muller* v. *Southern Pacific Branch Ry. Co.* (1890) 83 Cal. 240, 243-244 [23 P. 265].) This is the rule urged by plaintiff and, contrary to plaintiff's claim, appears to have been the rule applied by the trial court. Essentially, recovery is had for the diminution in the value of the land.

We must emphasize however that defendant's **valuation**

evidence was confined to the strip subject to the easements and did not relate to the 27-acre orchard as a whole. Defendant presented no evidence to show the value of the entire orchard in its *before* condition (subject only to the flood control district's road easement), the value of the same property in its *after* condition (subject to both the road easement and plaintiff's sewer easement), and any difference between such values.[3] Instead, as can be seen from the testimony of Ernest Filice quoted above, the purpose and object of the opinion evidence offered by defendant was to show the value of the easement sought to be condemned by itself and apart from the remainder of the orchard. Notably, in following this method of valuation, defendant did not establish the market value of the 15-foot strip before and after the imposition of the second easement, leaving the computation of the difference to the trier of fact. Defendant's witness testified directly that the market value of the sewer easement was $2,250. In effect, therefore, defendant testified to the diminution in value of the strip of land *in a lump sum*, in much the same way as a valuation witness may give evidence of severance damages in a lump sum without proving the before and after value of the property not taken. (See *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 401 [144 P.2d 799]; *Pacific Gas & Elec. Co.* v. *Hufford* (1957) 49 Cal.2d 545, 555 [319 P.2d 1033]; *People* v. *Loop* (1954) 127 Cal.App.2d 786, 799 [274 P.2d 885]; *People* v. *Hayward Bldg. Materials Co.* (1963) 213 Cal.App.2d 457, 464-465 [28 Cal.Rptr. 782].) While we think that the giving of "before" and "after" values for the strip of land would have been more in conformity with the applicable measure of compensation stated by Nichols (see 4 Nichols, *op. cit.*, pp. 286-287) no objection seems to have been raised either here or in the court below as to the witness' method of stating diminution in value as a lump sum. The fair market value of the sewer easement is not attacked because it is not preceded by and based upon testimony as to "before" and "after" value.

We are therefore presented with a situation where the

---

[3] As plaintiff correctly points out, any resultant difference would have represented not only the value of the second easement but also any severance damages to that portion of the orchard not taken. The severance damages would have had to be separately assessed (Code Civ. Proc., § 1248) and subtracted from the above difference in value so as to produce a figure representing the value of the sewer easement by itself.

owner of property (the witness Filice being so regarded here) has given his opinion as to the value of an easement to be imposed thereon and also stated the reasons for ·such opinion. ▮ It is of course well settled that an owner of property may testify to its value. (*Kitchel* v. *Acree* (1963) 216 Cal.App.2d 119, 124 [30 Cal.Rptr. 714] ; see 19 Cal.Jur. 2d, Evidence, § 373, p. 101.) ▮ It is also well settled that, having given an opinion as to value, the owner should be permitted to give his reasons for such opinion since it is the general rule that an opinion is worth no more than the reasons on which it is based. (*Long Beach City High School Dist.* v. *Stewart* (1947) 30 Cal.2d 763, 772-773 [185 P.2d 585, 173 A.L.R. 249] ; *People* v. *Nahabedian* (1959) 171 Cal.App. 2d 302, 309 [340 P.2d 1053] ; *Kitchel* v. *Acree, supra.*) ▮ However, as was said in *People* v. *La Macchia* (1953) 41 Cal.2d 738, 747 [264 P.2d 15],[4] " [i]n stating his opinion as to the value of property, the owner is bound by the same rules of admissibility of evidence as is any other witness." ▮ Finally, the trier of fact as the exclusive judge of the credit and weight to be given to the testimony of witnesses, including expert witnesses, is the judge of the effect and value of opinion evidence. (*People* v. *Loop, supra*, 127 Cal. App.2d 786, 800.) ▮ Generally speaking, opinion evidence as to value "usually goes no further than to give the court more or less general ideas on the subject. From the evidence thus received a trial court must draw its own conclusions of value by a process of balancing and reconciling, if possible, the varying opinions." (*Roloff* v. *Hundeby* (1930) 105 Cal.App. 645, 652-653 [288 P. 702] ; *Employees' Participating Assn.* v. *Pine* (1949) 91 Cal.App.2d 299, 303 [204 P.2d 965].)

Plaintiff contends that defendant's valuation evidence should not have been considered at all and that the court erred in denying plaintiff's motion to strike it. It is argued that the opinion of value given by defendant's witness Filice was based on speculative and conjectural evidence and that the witness was unable to segregate the proper from the improper elements given by him as the basis of his opinion.

In the instant case, the witness Filice gave six reasons for his opinion that the fair market value of the easement was $2,250. The record clearly ·shows that two of these reasons were stricken by the court: numbers (3) and (6) according

---

[4]Overruled on other grounds in *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 679 [312 P.2d 680].

to our summary set forth earlier in this opinion. Reason (3) related to the creating of dust on the easement; reason (6) related to the dumping of garbage. ■ Although the record does not speak with equal clarity on the subject, we think that the court also indicated it was striking reason (4) dealing with damage to crops. Even if this reason had not been stricken, it would not be a proper factor in the valuation of the strip of land, since it obviously relates to damage to that portion of the orchard not taken in the proceedings and would fall within severance damages which the defendant had waived. Thus three of the witness' six reasons were *not* stricken by the court: (1) that the easement is a mark against the property affecting its sale; (2) the creation of traffic; and (5) that the easement is perpetual.

■ Plaintiff asserts that these three remaining reasons should also have been stricken. According to plaintiff's claim, reasons (1) and (5) are speculative and conjectural and reason (2), although a correct statement of fact, has not been shown by any evidence in the record to add any real burden to the land. We agree but only in part.

■ In our view, reason (1) (that the easement is a mark against the property thereby affecting its sale) is tantamount to saying that there is a possibility that prospective purchasers may be deterred from becoming interested in the property because it is encumbered with the sewer easement. This is not a factor which has a direct and certain effect upon the value of the property. It is a mere possibility and to the extent that it imports damage to the property is indicative of something which is contingent, remote, uncertain or speculative. (See *Coast Counties Gas & Electric Co.* v. *Miller & Lux, Inc.* (1931) 118 Cal.App. 140, 144 [5 P.2d 34]; *Arnerich* v. *Almaden Vineyards Corp.* (1942) 52 Cal.App.2d 265, 272 [120 P.2d 121]; *City of Los Angeles* v. *Geiger* (1949) 94 Cal.App.2d 180, 191 [210 P.2d 717].) We think reason (1) might properly have been stricken by the court below.

■ Reason (2) however (the creating of traffic) is, as plaintiff concedes, a correct statement of fact. We apprehend nothing speculative or conjectural about this reason. Plaintiff sought the easement here involved ''for the purpose of constructing, laying, maintaining, repairing and replacing an underground sanitary sewer pipe line ...'' The easement includes ''the right of Plaintiff to excavate and refill ditches and/or trenches for the location, placing, replacing, and

repair of said sewer pipe line.'' It can be reasonably inferred from the foregoing that the sewer easement will permit persons who previously had no right to do so, to be upon and travel over defendant's property not only in connection with the original construction of the sewer line but continuously in the future in connection with its maintenance, repair, and even replacement. This clearly constitutes a new burden on the land.

Reason (5) (that the easement is perpetual) is also factual and nonspeculative. As we have pointed out, plaintiff sought a "*Perpetual* easement and right of way" (italics added) over defendant's property. It is clear that the condemnee is entitled to less compensation when the taking is temporary than when it is perpetual. (See Nichols, *op. cit.*, §§ 12.41 subd. [2]; 12.5.) That an easement sought to be imposed on land is to be perpetual rather than merely temporary is a proper consideration entering into any estimate of diminution in market value which may result from the condemnation.

We therefore arrive at this final result: Of the six reasons on which defendant's valuation witness based his opinion as to the market value of the easement, two represented proper considerations and four improper considerations. Of the last four, three had been stricken by the trial court and, as we have concluded, an additional one should have been. The witness, however, did not assign any particular damage or amount of value to any one of the reasons which he gave. In substance, his testimony was that he arrived at his estimate of value because of all the reasons.[5] Nowhere does it appear that he based his opinion chiefly on one or more specified reasons or that the four reasons which were improper considerations as noted above were the chief elements in any calculations which resulted in his estimate of value.

Where a witness testifies as to value and bases his opinion entirely upon improper considerations or incompetent and inadmissible matters, his testimony may be properly stricken from the record. (*People* v. *Dunn* (1956) 46 Cal.2d 639, 641 [297 P.2d 964]; *City of Stockton* v. *Ellingwood* (1929) 96 Cal.App. 708, 716, 722 [275 P. 228]; *Coast Counties Gas & Electric Co.* v. *Miller & Lux, Inc., supra,* 118

---

[5]Mr. Filice testified on cross-examination that ''it is an overall estimate of everything concerned'' and that ''I can't say that we can put a price on any one reason. It all adds up to more or less the figure that we came up with.''

Cal.App. 140, 143-144; *City of Redding* v. *Diestelhorst* (1936) 15 Cal.App.2d 184, 192-195 [59 P.2d 177].) ▋ Where the valuation testimony embraces proper as well as improper considerations, a motion to strike may properly be denied and the matter left to the court or jury to determine the weight to be given the testimony. The question is address-ed to the discretion of the trial court (*People* ex. rel. *Dept. of Public Works* v. *Lipari* (1963) 213 Cal.App.2d 485, 493 [28 Cal.Rptr. 808]). ▋ Whether the opinion as to value is that of an expert or an owner, the weight to be given it is largely dependent on the reasons for the opinion and unless the opinion is wholly and entirely based on improper con-siderations or incompetent matters, the weight to be given the opinion is a question for the trier of fact. (*People* v. *Rice* (1960) 185 Cal.App.2d 207, 213 [8 Cal.Rptr. 76].) ▋ As the court said in *People* v. *Nahabedian, supra,* 171 Cal. App.2d 302, 310, "[i]t must be remembered that the facts stated as reasons for the opinion of the witness do not become evidence in the sense that they have independent probative value upon the issue as to market value. On the contrary, they serve only to reinforce the judgment of the witness, that is, they go to the weight to be accorded his opinion [cita-tion]."

▋ In the instant case the court granted plaintiff's mo-tion to strike in part by striking three of the reasons given by the witness. Three reasons remained, one of which, as we have pointed out, the court might have also properly strick-en. Two of the remaining reasons were proper considerations on which to base the opinion. We think that the court proper-ly allowed the remaining valuation testimony, the witness' estimate of value and the above reasons to remain in the record so that the weight of the opinion as to value could be determined by the trier of fact.

Plaintiff argues that all of the valuation testimony should have been stricken on the authority of *Blumenstein* v. *City of Long Beach* (1956) 143 Cal.App.2d 264 [299 P.2d 347]. That case was an action for inverse condemnation and damages to land resulting from the construction of certain highway im-provements. The owner's only expert witness admitted under cross-examination that he had let certain noncompensable factors influence his determination of the decline in the market value of the property. The opinion does not expressly state that the expert's opinion was based entirely on non-compensable factors. It does state that the trial court had no

testimony on the question of the amount of compensable damage to the property involved "which was not colored by the inclusion and consideration of noncompensable factors" (p. 271). The court also pointed out that the trial judge was dissatisfied with the evidence on damages and regarded it as too "sketchy." It was held that a motion to strike the valuation testimony of the owner's only expert witness should have been granted since "a close inspection and analysis of the evidence discloses that the trial judge had no competent proof to guide him in computing the extent of the detriment suffered by virtue of compensable injuries and consequently he was not in a position to calculate with a fair degree of accuracy the extent of the damages." (P. 271.)

*Blumenstein* does not state that there were proper as well as improper considerations for the expert's opinion. From our reading of the case we think that the court determined that the estimate of value should have been stricken because in practical effect it was based entirely on improper considerations (see *People* v. *Dunn* and other authorities, *supra*) or at the very least because improper considerations were the chief elements in the calculations leading to the witness' estimate (*San Diego Land & Town Co.* v. *Neale* (1891) 88 Cal. 50, 63 [25 P. 977, 11 L.R.A. 604]). In either event, the entire valuation testimony should have been stricken. In the case at bench, on the contrary, Filice's estimate was not based entirely on improper considerations nor does the record show that they were the chief elements upon which the estimate was based. The trial court was therefore not compelled to strike the opinion but could properly determine the weight to be given it upon a consideration of the entire record.

Plaintiff also contends that the evidence is insufficient to justify the judgment. In reality, however, such contention represents an attempt to have us reweigh the evidence and redetermine the credibility of witnesses. As part of the contention, plaintiff introduces a subsidiary argument that the witness Filice was impeached. ■ The credibility of the witnesses and the weight to be accorded the evidence are matters within the exclusive province of the trial court (*Kuhn* v. *Gottfried* (1951) 103 Cal.App.2d 80, 84 [229 P.2d 137]). ■ Differences in the valuation testimony in the instant case represented merely a conflict in the evidence. (*City of Riverside* v. *Kraft* (1962) 203 Cal.App.2d 300, 304 [21 Cal.Rptr. 425]; *People* v. *Hayward Bldg. Materials Co.*, *supra*, 213 Cal.App.2d 457, 467.) It was the exclusive province of the trial court to weigh such evidence and to determine the

amount of compensation within the range of such testimony. *People* v. *Hayward Bldg. Materials Co., supra.*) This disposes of plaintiff's additional complaint that the court did not accept (although it did receive) the valuation testimony of plaintiff's expert and the evidence relating to sales to plaintiff of similar sewer easements, on which such expert in part based his opinion. It is apparent that the trial court weighed all of the valuation evidence and determined an award within the range of plaintiff's witness ($1.00) and defendant's ($2,250). This was properly within the range of values. (*People* ex rel. *Dept. of Public Works* v. *McCullough* (1950) 100 Cal.App.2d 101, 105-106 [223 P.2d 37]; *Redevelopment Agency* v. *Modell* (1960) 177 Cal.App.2d 321, 326-327 [2 Cal.Rptr. 245].)

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

Appellant's petition for a rehearing was denied November 8, 1963, and its petition for a hearing by the Supreme Court was denied December 11, 1963.