Filed 12/18/20  Erickson v. County of Nevada CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| JULIET ERICKSON et al., | C082927 |
| Plaintiffs and Appellants, | (Super. Ct. No. CU13079389) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| COUNTY OF NEVADA, | |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on November 30, 2020, be modified as follows:

1.  On page 12, the third sentence of the first full paragraph that begins with "Indeed, *Dollan*, *Nolan*, and *Koontz* all involved . . . ." is to be replaced with the following sentence:

Indeed, *Dolan*, *Nollan*, and *Koontz* all involved government demands that the landowner convey a specific property interest to the public.

1

2.  The following footnote is added to the end of the last sentence on page 12:

In a petition for rehearing, appellants contend the County's conditions "would have required [them] to spend considerable sums of money over an extended period of time" to maintain the vegetation on their property, even if the conditions would not have required them to convey any part of their land.  For that reason, appellants argue, their claim is comparable to that in *Koontz.*  But because appellants raise this factual claim for the first time in their petition for rehearing, we will not consider it.  (*People ex rel. Dept. of Public Works v. Mascotti* (1962) 206 Cal.App.2d 772, 779 [" 'points not previously argued will not be considered where raised for the first time on petition for rehearing' "].)

This modification does not change the judgment.


BY THE COURT:


        /s/
BLEASE, Acting P.J.


        /s/
HULL, J.


        /s/
MAURO, J.

Filed 11/30/20  Erickson v. County of Nevada CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| JULIET ERICKSON et al., | C082927 |
| Plaintiffs and Appellants, | (Super. Ct. No. CU13079389) |
| v. | |
| COUNTY OF NEVADA, | |
| Defendant and Respondent. | |

The United States Supreme Court has identified several limitations on the government's ability to require a landowner to convey property as a condition of obtaining a land use permit.  The court has held conditions of this sort, known as "land-use exactions," violate the takings clause of the Fifth Amendment unless there is a "nexus" and "rough proportionality" between the government's condition and the effects of the proposed land use.

In this case, appellants Juliet Erickson and Peter Lockyer allege Nevada County (the County) violated these principles when they sought a permit to build a house and

1

garage. The County granted their requested permit but only on the condition that appellants maintain the trees and vegetation on part of their property indefinitely. Contending this condition was an unconstitutional exaction, appellants filed suit and sought compensation and a permit without this condition.

The court below agreed with appellants in part. It agreed the County needed to issue appellants their permit without the contested condition, though not because of the takings clause. It instead did so because it believed the County required the condition based on its mistaken reading of a County ordinance. The court also agreed the County's condition was an "exaction" that lacked the required "nexus" and "proportionality." But although finding an improper exaction, the court nonetheless rejected appellants' request for compensation. In the court's view, appellants would be entitled to compensation only if the County's conduct caused extraordinary delay or was based on some illegitimate motive. But the court found neither, explaining appellants suffered only ordinary delay in the permitting process.

On appeal, appellants contend the trial court—in requiring them to prove extraordinary delay or illegitimate motive—demanded more than is necessary under the United States Supreme Court's exaction cases. Regardless of whether the trial court erred in this regard, however, we find the court's ultimate conclusion sound: Appellants were not entitled to compensation. Appellants' takings claim was solely premised on their exaction theory, but, unlike the trial court, we find the County never imposed an "exaction." As the California Supreme Court has noted, "[i]t is the governmental requirement that the property owner *convey* some identifiable property interest that constitutes a so-called 'exaction' under the takings clause . . . ." (*California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 460-461 (*California Building*), italics added.) But although the County certainly sought to restrict appellants' use of their property, it never asked them to convey anything. We thus find no exaction that would give rise to a takings claim and affirm on that basis.

BACKGROUND

In March of 2011, appellants applied to the County for a permit to build a house and garage.

The following month, the County provided several comments to appellants' application. Among other things, the County noted that the proposed buildings would impact a "visually important ridgeline" within the meaning of the County's Visually Important Ridgeline ordinance (Ridgeline Ordinance)—one of the County's ordinances intended "to guide the design, location, and development of new land uses and the alteration of existing uses." (Nev. County Ord., § L-II 4.1.1.) According to the Ridgeline Ordinance, applicants must submit a management plan for projects the County determines may impact "a visually important ridgeline," and this plan must "delineate specific protective measures and impact controls necessary to minimize visual impact to the maximum extent possible." (Nev. County Ord., § L-II 4.3.16.) Based on these requirements, the County directed appellants to submit a management plan minimizing the potential visual impacts of their proposed house and garage.

In response to the County's request, appellants submitted a management plan discussing three mitigation measures that, in appellants' view, addressed the negative visual impact on the ridgeline. The plan noted (1) the garage, the only structure having a potential negative visual impact, was "designed and oriented such that the height of various portions of the building and roof slope match the existing slope of the hillside," (2) "[e]xisting mature and healthy trees located directly south of the building will remain to help screen the building and establish the visual profile of the ridgeline," and (3) appellants planted native cedar "to provide further screening as they mature."

The County, however, disagreed that these measures would be sufficient to address the project's visual impact. To protect "the visual quality" of the ridgeline, the County approved appellants' management plan subject to the following conditions: (1) the house and garage could not exceed certain specified height limits; (2) the property

3

owner must agree, in a recorded deed restriction, (a) to replace dead or dying trees that are removed from a designated part of the property and (b) not to remove or thin trees in this designated area unless a biologist concludes the tree is dead or dying or a fire district finds removal or thinning necessary for fire safety purposes; and (3) the "existing native vegetation located south of the proposed structures shall remain standing on the property," "[v]egetation removal shall not expose the structures as viewed from" a certain nearby road, and "[a]ll trees proposed for removal to accommodate the construction of the residence and garage shall be indicated on the construction site plans and evaluated by the architect." The County imposed these conditions over appellants' objections.

After unsuccessfully appealing the second and third conditions to the County's board of supervisors, appellants filed a complaint and petition for writ of mandate in Nevada County Superior Court. According to appellants, the County's conditions prohibiting them "from removing trees or vegetation growing on" parts of their property constituted an unlawful "exaction" in violation of the Fifth Amendment of the United States Constitution. Appellants asked the court to strike the County's tree maintenance conditions and award it compensatory damages and other costs of suit.

In its initial decision, the trial court agreed the County erred in imposing these conditions. The court found the County failed to establish that appellants' proposed home and garage would lie on a visually important ridgeline, and even if it did, the County failed to establish that the proposed house and garage would impact the ridgeline. Even if these flaws were set aside, the court continued, the County went too far in imposing the condition requiring a negative deed restriction. That condition, the court found, went beyond what was necessary to address the project's potential impacts and thus constituted an unconstitutional taking of property. The court added that this negative easement condition was also unconstitutionally vague. The court remanded the matter back to the County and informed the parties that it would set the trial on the compensation issue at a later date.

4

On remand, the County reconsidered and reapproved appellants' application, subject to three conditions that in many respects mirrored the previous imposed conditions. As conditions of approval, the County wrote, (1) the house and garage could not exceed certain specified height limits; (2) the property owner must agree, in a recorded deed restriction, (a) to replace dead, downed, or dying trees that are removed from a designated part of the property and (b) not to remove or thin trees in this designated area unless a biologist or arborist concludes the tree is dead or dying or a fire district finds removal or thinning necessary for fire safety purposes; and (3) the "existing native vegetation located south of the proposed structures shall remain standing on the property," "[v]egetation removal shall not expose the structures as viewed from" any public roads or parks, and "[a]ll trees proposed for removal to accommodate the construction of the residence and garage shall be indicated on the construction site plans and evaluated by the architect." The County's second condition, although using language largely identical to that used in its earlier conditional approval, now covered an area that was about a third smaller from the previous restricted area. The County also, in its reapproval, made several findings in support of its conclusion that appellants' proposed project would impact a "visually important ridgeline."

After unsuccessfully appealing the new conditions to the County's board of supervisors, appellants filed a supplemental complaint with the trial court. In their supplemental complaint, appellants claimed the County's conditional reapproval suffered from the same flaws the court found in the County's previous conditional approval.

The court agreed the County's conditions remained flawed, though for reasons other than the ones appellants raised. Although finding the County had "remedied substantially all of the defects found present in the initial writ hearing," the court now found an additional flaw in one of the County's conditions for approval. The court concluded the County's second condition, the deed restriction, was inconsistent with Civil Code section 815.3. Under section 815.3, the court noted, counties may obtain

5

conservation easements that are voluntarily conveyed, but they may not demand conservation easements as a condition to issuing a land use approval. Because, in the court's view, the County's deed restriction condition was in effect a conservation easement, the court found the County's attempt to impose this condition violated section 815.3. It thus directed the County to issue the building permit without this condition.

After further briefing from the parties, the court modified its reasoning and expanded its ruling to cover both the County's second and third conditions. Setting aside its finding based on Civil Code section 815.3, the court now focused on the County's Ridgeline Ordinance. The County purported to impose its three conditions based on the Ridgeline Ordinance, but, the court found, that ordinance did not apply to individual building permits like that here. Because the County thus had no authority to impose these three conditions, the court found all the conditions improper. The court thus struck the two conditions appellants challenged—that is, conditions two and three. The court also briefly addressed whether the County's attempt to impose these conditions violated the takings clause. Although the court earlier wrote the County's actions resulted in a taking, the court now explained no final judgment had been issued on that topic and none would be issued until after the inverse condemnation trial.

Following the inverse condemnation trial, the court issued its final statement of decision on appellants' petition and complaint. Agreeing with appellants, the court found the County's tree maintenance conditions "operate[d] as an exaction" and lacked the required "nexus" and "rough proportionality" to the effects of appellants' proposed land use. Although the court suggested these requirements of "nexus" and "rough proportionality" would have been satisfied had the Ridgeline Ordinance been applicable, it found neither requirement could be satisfied when, as here, the County acted without authority.

But although finding an improper exaction, the court ultimately found no unconstitutional taking of property had occurred. The County's conditions did not result

6

in a permanent taking, the court wrote, because the court eliminated those two conditions in the writ proceedings.  Nor, the court found, did the County's conditions result in a compensable temporary taking considering *Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006.  The California Supreme Court there considered "whether a legally erroneous decision of a government agency during the development approval process resulting in delay constitutes a temporary taking of property." (*Id.* at p. 1018.)  It ultimately concluded it did not because a normal delay, by itself, does not constitute a temporary taking (*id.* at p. 1021), unless the government's conduct was "so objectively unreasonable as to give rise to the inference that it was adopting that position solely for purposes of delay or some other illegitimate reason" (*id.* at p. 1025).  Applying *Landgate, Inc.*'s reasoning, the trial court rejected appellants' takings claim because they had not shown that the County's conduct either caused "something more than mere delay in the permit process" or was based on some illegitimate motive.

Appellants timely appealed.

DISCUSSION

I

A

The takings clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, "provides that private property shall not 'be taken for public use, without just compensation.' " (*Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528, 536 (*Lingle*).)

The United States Supreme Court has identified two general categories of takings: "physical takings" and "regulatory takings." (*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency* (2002) 535 U.S. 302, 321.)  A physical taking, the classic type of taking, is based on the government's " ' "direct appropriation" of property, or the functional equivalent of a "practical ouster of [the owner's] possession." ' [Citations.]" (*Lingle, supra,* 544 U.S. at p. 537.)  Government conduct that matches this

7

description (e.g., when the government seizes property under its condemnation power) will generally be deemed a taking based on "the straightforward application of *per se* rules." (*Tahoe-Sierra Preservation Council, Inc.*, at p. 322.) A regulatory taking, in turn, is based on government regulation that, generally stated, goes " 'too far' " in restricting a landowner's use of his or her property. (*Lingle*, at p. 537.) To determine whether a regulation has gone "too far," courts usually—rather than apply *per se* rules—consider "a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 617.)

Apart from these two general categories of takings, the Supreme Court has also identified a "special" category of takings claims for "land-use exactions." (*Lingle*, *supra*, 544 U.S. at p. 538.) A land use exaction occurs when the government demands property from a land use permit applicant in exchange for permit approval. (See *Koontz v. St. Johns River Water Management Dist.* (2013) 570 U.S. 595, 599 (*Koontz*).) The leading examples of "exactions" come from the Supreme Court's decisions in *Nollan v. California Coastal Comm'n* (1987) 483 U.S. 825 (*Nollan*), *Dolan v. City of Tigard* (1994) 512 U.S. 374 (*Dolan*), and *Koontz*. In *Nollan*, the California Coastal Commission had conditioned its grant of a permit to landowners who sought to rebuild their house on their agreeing to transfer to the public an easement across their property. (*Nollan*, at p. 827.) In *Dolan*, a city had conditioned its grant of a permit to a property owner who sought to increase the size of her existing retail business on her agreeing to dedicate a portion of her property to the city for use for a bike path and for flood control purposes. (*Dolan*, at p. 377.) And in *Koontz*, a water district had conditioned its grant of a permit to a landowner who sought to develop 3.7 acres of an undeveloped property on his agreeing to spend money to improve certain lands the water district owned. (*Koontz*, at pp. 599-602, 614.)

To determine whether these types of demands are impermissible, courts apply a "special application of the 'doctrine of "unconstitutional conditions." ' " (*Lingle*, *supra*, 544 U.S. at p. 547.) Under that doctrine, the government may not ask a person to give up a constitutional right (e.g., the right to receive just compensation when property is taken for a public use) "in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." (*Dolan*, *supra*, 512 U.S. at p. 385.) Applying that doctrine in the context of land use exactions, the Supreme Court has placed two requirements on governmental entities when they demand property from applicants in the land use permitting process. The government must show (1) a "nexus" between the government's legitimate regulatory interest and the property demanded (*id.* at p. 386), and (2) " 'rough proportionality' " between the property demanded and "the impact of the proposed development" (*id.* at p. 391).

Unlike most takings claims, exaction claims are not necessarily premised on the taking of any property. As the Supreme Court explained in *Koontz*, the principles undergirding the court's exaction cases "do not change depending on whether the government *approves* a permit on the condition that the applicant turn over property or *denies* a permit because the applicant refuses to do so." (*Koontz, supra*, 570 U.S. at p. 606.) In both circumstances, the court found, the condition is improper if it lacks the requisite nexus and rough proportionality. (*Ibid.*; see also *id.* at p. 607 ["Extortionate demands for property in the land-use permitting context run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation."].) But, the court emphasized, "[t]hat is not to say . . . that there is *no* relevant difference between a consummated taking and the denial of a permit based on an unconstitutionally extortionate demand. Where the permit is denied and the condition is never imposed, nothing has been taken. While the unconstitutional conditions doctrine recognizes that this *burdens* a constitutional right, the Fifth Amendment mandates a particular *remedy*—just compensation—only for

9

takings. In cases where there is an excessive demand but no taking, whether money damages are available is not a question of federal constitutional law but of the cause of action—whether state or federal—on which the landowner relies." (*Id.* at pp. 608-609.)

B

Appellants' principal contention on appeal concerns the trial court's finding that they were not entitled to compensation. As they note, the court found the County's conditions "operate[d] as an exaction" and lacked a "nexus" and "rough proportionality" to the effects of appellants' proposed land use. And as they further note, the court nonetheless declined to rule in their favor because they had failed to show, in addition to the lack of "nexus" and "rough proportionality," that the County's conduct either caused extraordinary delay or was based on some illegitimate motive. According to appellants, the court erred in imposing this third requirement on top of the nexus and proportionality requirements.

In evaluating appellants' claim, we consider first whether the County's conditions could be characterized as an "exaction" subject to the "nexus" and "proportionality" requirements. Because we conclude they could not, and because appellants' takings claim was solely premised on their exaction theory, we find the trial court appropriately declined to rule in appellants' favor on their takings claim.

The California Supreme Court's reasoning in *California Building*, *supra*, 61 Cal.4th 435 is particularly instructive to our analysis. The court there considered what qualifies as an "exaction" within the meaning of *Nollan*, *Dolan*, and *Koontz*—the United States Supreme Court's lead exaction cases. Reviewing these three cases, the court found nothing in these cases suggested "the unconstitutional conditions doctrine . . . would apply where the government simply restricts the use of property without demanding the conveyance of some identifiable protected property interest (a dedication of property or the payment of money) as a condition of approval." (*California Building,* at p. 460.) Rather, the court explained, "[i]t is the governmental requirement that the property owner

10

convey some identifiable property interest that constitutes a so-called 'exaction' under the takings clause and that brings the unconstitutional conditions doctrine into play." (*Id.* at pp. 460-461.)

Based on this reading of *Nollan*, *Dolan*, and *Koontz*, the court upheld a residential inclusionary zoning ordinance that required developers of residential properties of 20 or more units to set aside 15 percent of units for sale at an affordable price. Although a building association contended the ordinance was an unconstitutional exaction under the state and federal takings clauses, the court found the ordinance could not be characterized as an exaction because it did not require developers to convey any property interest. (*California Building*, *supra*, 61 Cal.4th at p. 461.) "Rather than being an exaction," the court explained, the ordinance falls within "municipalities' general broad discretion to regulate the use of real property to serve the legitimate interests of the general public and the community at large." (*Ibid.*)

Other courts have found similarly on facts more comparable to our own. The Federal Circuit's decision in *Norman v. United States* (Fed.Cir. 2005) 429 F.3d 1081 is a notable example. The appellants there were real estate developers who sought to develop commercial buildings on lands previously used for ranching and agricultural activities. (*Id.* at p. 1085.) During the development process, the Army Corps of Engineers identified several acres of wetlands that would be impacted by the proposed project. (*Ibid.*) To mitigate for the loss of those wetlands, the Army Corps of Engineers issued a permit requiring the appellants to record deed restrictions to protect certain other wetlands they owned as " 'wetland preserves and wildlife habitat in perpetuity.' " (*Id.* at p. 1087.) The appellants afterward filed suit alleging, among other things, that the permit effected an unconstitutional exaction under the logic of *Nollan*. (*Norman,* at p. 1089.) But the Federal Circuit disagreed. *Nollan*, the court explained, "involved the use of a permit process to exact from a landowner an easement allowing public access across his land"—a type of physical intrusion. (*Norman,* at p. 1089.) But "[n]o such physical

11

intrusion" resulted from the permit's requirement that the appellants protect certain wetlands on their property. (*Ibid.*) And given the absence of any physical intrusion or loss of exclusive possession, the court found the permit did not " 'exact' possession of the land." (*Ibid.*)

We likewise find the County's conditions here cannot be characterized as an "exaction" under the *Nollan*, *Dolan*, and *Koontz* framework. As the *California Building* court explained, "[i]t is the governmental requirement that the property owner *convey* some identifiable property interest that constitutes a so-called 'exaction' under the takings clause and that brings the unconstitutional conditions doctrine into play." (*California Building*, *supra*, 61 Cal.4th at pp. 460-461, italics added.) Indeed, *Dollan*, *Nolan*, and *Koontz* all involved government demands that the landowner convey a specific property interest to the public. (See *Koontz*, *supra*, 570 U.S. at pp. 599, 614 [demand for monetary expenditure]; *Dolan*, *supra*, 512 U.S. at p. 377 [demand for land for bike path and flood control purposes]; *Nollan*, *supra*, 483 U.S. at p. 827 [demand for easement across property].) They all involved, in other words, government demands that if carried out outside of the permitting process would have involved "*per se* physical takings" of property from the landowner. (*Lingle*, *supra*, 544 U.S. at pp. 546-547; see also *Koontz*, at p. 614 [noting petitioner's claim rested not on "*regulatory* taking" principles but on a " '*per se* [takings] approach' "].)

But not so here. The County's permit conditions, reduced to their essence, required appellants to maintain a tree screen to prevent the neighboring public from seeing their garage. To achieve this end, the County directed appellants to maintain the trees and vegetation located in a certain area of their property. None of the County's conditions interfered with appellants' right to exclusive possession of their property. Nor did any of the County's conditions require appellants to convey any part of their property. The County instead sought to restrict appellants' use of a portion of their property to maintain the existing tree screen. And under the reasoning of *California Building*, a

12

government condition that "restricts the use of property without demanding the conveyance of some identifiable protected property interest" is not an "exaction." (*California Building*, *supra*, 61 Cal.4th at p. 460.)

Appellants never contend otherwise in their briefing. They instead argue the County forfeited this issue by failing to file a cross-appeal challenging the court's finding that the permit operated as an exaction. In support, appellants rely on *Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560 (*Preserve Poway*) and *Estate of Powell* (2000) 83 Cal.App.4th 1434 (*Estate of Powell*)—two cases where the respondent, who filed no cross-appeal, sought "*reversal* of the judgment and entry of a new judgment more favorable to him." (*Estate of Powell*, at p. 1439; see also *Preserve Poway*, at p. 587.)

But the County does not seek "*reversal* of the judgment and entry of a new judgment more favorable to" it. It instead seeks affirmance of the judgment on a different ground. And as both of appellants' cited cases explain, that is perfectly permissible. The court in *Estate of Powell*, for example, explained that Code of Civil Procedure section 906 allows a respondent who has not filed a cross-appeal " 'to assert a legal theory which may result in affirmance of the judgment.' [Citation.]" (*Estate of Powell*, *supra*, 83 Cal.App.4th at p. 1439.) The *Preserve Poway* court likewise noted that Code of Civil Procedure section 906 "is intended to permit a respondent to assert a legal theory that will result in affirmance of the judgment notwithstanding an appellant's contentions." (*Preserve Poway*, *supra*, 245 Cal.App.4th at p. 586.)

13

## II

Finally, appellants contend the trial court should have struck all the County's permit conditions rather than only the second and third conditions. But appellants fail to show they sought this relief in the trial court proceedings, and we find the claim forfeited as a result.

In their pleadings, appellants asked the trial court to strike only those "restrictions described in the complaint"—namely, the conditions prohibiting them "from removing trees or vegetation growing on" parts of their property. The County's second and third conditions fit this description, but the first condition—which imposed a height restriction—did not. The court below thus described appellants' challenge in the writ proceedings this way: "Petitioners challenge Condition #2 and Condition #3 of the Management Plan required by the County in connection with the issuance of their building permit." And the court ultimately granted the very relief appellants requested by striking these two conditions.

Yet now appellants claim the court's ruling should have offered broader relief than they requested in their pleadings. Because they failed to demonstrate they sought this relief below, however, we find the claim forfeited on appeal. (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 798 [party forfeited claims "by failing to demonstrate either that it preserved these arguments in the trial court, or that it may properly raise such arguments for the first time on appeal"].)

## DISPOSITION

The judgment is affirmed.  The County is entitled to recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/s/
BLEASE, Acting P. J.

We concur:

/s/
HULL, J.

/s/
MAURO, J.

15