Filed 1/19/24 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| K & S STAFFING SOLUTIONS, INC.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THE WESTERN SURETY COMPANY et al.,<br><br>Defendants and Respondents. | C096705, C097987<br><br>(Super. Ct. No. STK-CV-UCC-2017-0011949)<br><br>MODIFICATION OF OPINION AND DENIAL OF PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of San Joaquin County, Jayne Chong-Soon Lee, Judge. Affirmed.

Downey Brand, Matthew J. Weber, Alexandra K. LaFountain and Jennifer L. Williams for Plaintiff and Appellant.

Brunn & Flynn, Gerald E. Brunn, John K. Peltier and Drexwell M. Jones for Defendants and Respondents.

1

THE COURT:

Appellant filed a petition for rehearing with this court. It is hereby ordered that the petition for rehearing is denied.

It is also ordered that the opinion filed herein on January 2, 2024, be modified as follows:

1.  On page 7, at the end of the last paragraph of part I of the Discussion, add as footnote 3 the following footnote, which will require renumbering of all subsequent footnotes:

    3 In a petition for rehearing, K&S raises four points. First, while acknowledging the text of the mechanics' lien law has changed over time, it contends the Legislature intended the law to continue covering the same types of claimants mentioned in the older cases. But nothing in our opinion says any differently. We, again, find only that K&S cannot obtain the relief it seeks by characterizing itself as a "laborer" under section 9100. Second, K&S reads section 8024 to define laborer to mean both (1) any person who, acting as an employee, performs labor on a project, and (2) any person who bestows skill or other necessary services on a project. We disagree. The statute's plain terms speak only of a "person who, acting as an employee," does certain things; it does not reference some persons who are, and others who are not, acting as an employee. Third, citing Government Code section 68081, K&S claims it is entitled to a rehearing because we interpreted the term "laborer" differently than the parties had briefed. But the cited provision applies only when the court renders a decision based on an "issue" that was not proposed or briefed (Gov. Code, § 68081); and here, we based on our decision on the very issue—and indeed, the very statute— the parties raised. Lastly, K&S claims we should grant it relief under section 9100, subdivision (a)(1). That provision describes one of the categories of

persons who may assert a claim against a payment bond—namely, "[a] person that provides work for a public works contract, if the work is authorized by a direct contractor, subcontractor, architect, project manager, or other person having charge of all or part of the public works contract." (§ 9100, subd. (a)(1).) But K&S never discussed this particular provision in its initial briefing, nor has it shown that it satisfied the distinct procedural requirements for seeking relief under this provision. (See §§ 9300, 9560.) We thus reject this belatedly raised and insufficiently supported claim. (*People ex rel. Dept. of Public Works v. Mascotti* (1962) 206 Cal.App.2d 772, 779 [" 'points not previously argued will not be considered where raised for the first time on petition for rehearing' "].)

This modification does not change the judgment.


FOR THE COURT:


_____/s/_____
HULL, Acting P. J.


_____/s/_____
BOULWARE EURIE, J.


_____/s/_____
MESIWALA, J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| K & S STAFFING SOLUTIONS, INC., | C096705, C097987 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UCC-2017-0011949) |
| v. | |
| THE WESTERN SURETY COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Jayne C. Lee, Judge. Affirmed.

Downey Brand, Matthew J. Weber, Alexandra K. LaFountain, and Jennifer L. Williams for Plaintiff and Appellant.

Brunn & Flynn, Gerald E. Brunn, John K. Peltier, and Drexwell M. Jones for Defendants and Respondents.

1

California's mechanics' lien law (Civ. Code, §§ 8000-9566)[1] provides a measure of protection to those working on private and public works of improvement. Among other things, it requires certain contractors that are awarded a public works contract involving an expenditure over $25,000 to post a payment bond before work begins. It also authorizes laborers and several others to assert a claim against the payment bond when they have not been paid in full.

In this appeal, we consider two questions about this law that arose after a subcontractor for two state projects failed to fully pay a staffing company for its services. We consider first whether the staffing company is a "laborer" within the meaning of the mechanics' lien law. We consider next whether the payment bonds issued for these projects are subject to the mechanics' lien law's requirements. The trial court concluded that the staffing company was not a "laborer" and that the payment bonds were subject to the mechanics' lien law's requirements. Because we agree, we affirm.

BACKGROUND

California's Department of Transportation (Caltrans) awarded VSS International, Inc. (VSSI) two contracts for road maintenance work. Each contract involved an expenditure over $25,000, and for each, VSSI obtained a payment bond from the Western Surety Company (Western).

Titan DVBE Inc. (Titan) was a subcontractor for both projects. For most years it operated, Titan employed its workers directly. But after learning its insurance carrier would no longer offer workers' compensation insurance in California, Titan turned to K&S Staffing Solutions, Inc. (K&S) to fulfill its staffing needs. After entering into an agreement with K&S, Titan continued to supervise the same workers as it had before and continued to find new workers when needed. But now K&S paid the workers' wages,

---

[1] Undesignated statutory references are to the Civil Code.

2

payroll taxes, vacation pay, sick pay, and unemployment insurance.  Over time, K&S's charges for its services cut into Titan's profitability, leading eventually, according to Titan's owner, to Titan becoming too "upside down . . . to save."  In the end, Titan never paid K&S all amounts it was owed for the Caltrans projects.

K&S later sued VSSI and Western (together, respondents) to recover these amounts.  It asserted it was a "laborer" within the meaning of the mechanics' lien law and had a right to recover against the payment bonds for the two projects.  But the trial court disagreed.  It noted that the term "laborer" is defined in the mechanics' lien law to mean "a person who, acting as an employee, performs labor upon, or bestows skill or other necessary services on, a work of improvement."  (§ 8024, subd. (a).)  It then concluded that K&S was not a "laborer" because it failed to show it was the employer of the laborers here, noting among other things that K&S failed to show that it hired, trained, or supervised the workers.

After the trial court entered judgment in respondents' favor, respondents moved for attorney fees under a provision in the mechanics' lien law requiring trial courts to award attorney fees to the prevailing party in any "action to enforce the liability on [a] [payment] bond."  (§ 9564, subd. (c).)  K&S opposed the motion.  It argued that respondents could not receive attorney fees under this provision because the payment bonds here were not "payment bonds" within the meaning of the mechanics' lien law.  It reasoned as follows:  (1) The mechanics' lien law defines "payment bond" to mean "a bond required by Section 9550" (§ 8030); (2) section 9550 generally requires a payment bond for public works contracts involving expenditures over $25,000, but it provides an exemption if the contract is with a state department or certain other state entities (§ 9550, subds. (a), (e)); (3) the contracts here were with a state department, Caltrans; and (4) therefore, section 9550 did not require a payment bond for these contracts.  The trial court rejected K&S's argument and awarded attorney fees to respondents.

3

K&S timely appealed both the trial court's judgment and its later award of attorney fees.

DISCUSSION

I

*Laborer*

K&S first challenges the trial court's finding that it was not a "laborer" within the meaning of the mechanics' lien law. It asserts that it was a "laborer" because it took on the legal responsibilities of an employer for those who worked for Titan. Respondents counter that being the workers' employer was not enough; K&S also needed to furnish workers for the project, but it never did so. Considering the statutory text, we conclude that both parties misunderstand the meaning of the term "laborer." But we agree with respondents' bottom line: K&S was not a "laborer" within the meaning of the mechanics' lien law.

In interpreting a statute, " ' " '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.' " ' " (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 673.) "Because statutory language 'generally provide[s] the most reliable indicator' of that intent," we consider first "the words themselves, giving them their 'usual and ordinary meanings' and construing them in context." (*People v. Castenada* (2000) 23 Cal.4th 743, 747.) In general, absent an ambiguity in the statutory text, " ' " 'the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' " ' " (*Ibid.*; see also *Brennon B.*, at p. 673 [" ' " 'courts must generally follow [a statute's] plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend' " ' "].)

Applying these well-established principles here, we start with the relevant statutory language. Section 9100 describes certain persons who are entitled to assert a claim against a payment bond. (§ 9100, subd. (a); see also § 9554, subd. (b)(1).) One of those persons is a "laborer." (§ 9100, subd. (a)(2).) Section 8024 defines that term. It

4

provides that " '[l]aborer' means a person who, acting as an employee, performs labor upon, or bestows skill or other necessary services on, a work of improvement." (§ 8024, subd. (a); see § 8000.)[2]

K&S was not a "laborer" under this definition. K&S repeatedly equates a "laborer" with an employer, arguing, for instance, that it "was readily entitled to payment for the labor it provided" because "any 'laborer,' i.e., employer, is entitled to collect on the payment bonds." But as section 8024's plain text provides, a laborer is not a person who, acting as an *employer*, bestows labor on a work of improvement. It is instead "a person who, acting as an *employee*, performs labor upon, or bestows skill or other necessary services on, a work of improvement." (§ 8024, subd. (a), italics added.) K&S is not a person who was "acting as an employee" in any capacity, nor does it even allege as much.

K&S nonetheless maintains that it was a "laborer" based on old case law discussing prior versions of the mechanics' lien law. It first cites a case from over a century ago, *Sweet v. Fresno Hotel Co.* (1917) 174 Cal. 789. In its view, that case established that "an employer is entitled to collect on payment bonds for labor provided to a project." But the relevant statute there is not the relevant statute here. The statute in

---

[2] Section 8024 further provides that " '[l]aborer' includes a person or entity to which a portion of a laborer's compensation for a work of improvement, including, but not limited to, employer payments described in Section 1773.1 of the Labor Code and implementing regulations, is paid by agreement with that laborer or the collective bargaining agent of that laborer." (§ 8024, subd. (b).) According to the sponsor of the bill initially adding this type of language, the bill was "intended to reinstate the ability (eroded by case law as well as federal statute and changes in California law) of laborers and employee trust funds to use state mechanics' liens and creditor priorities to obtain payment of unpaid wages and fringe benefits." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 914 (1999-2000 Reg. Sess.) as amended Aug. 31, 1999, p. 4.) No party alleges that this language has any relevance here.

*Sweet* concerned " 'the labor done and materials furnished by all persons except the contractor' " and allowed these persons " 'a lien for the value thereof' " in certain circumstances. (*Id.* at p. 792.) The court ultimately found an employer was entitled to the benefit of this statute when it agreed "to bestow labor [for the construction of a] building, hiring the men himself and paying their wages." (*Id.* at pp. 796-797.) But the court never defined the term "laborer," and its decision offers no help in interpreting the current statutory definition of "laborer"—a definition initially added over 50 years after *Sweet*. (Stats. 1969, ch. 1362, § 2, p. 2754.)

Nor is another case K&S cites—*Contractors Labor Pool, Inc. v. Westway Contractors, Inc.* (1997) 53 Cal.App.4th 152—helpful in understanding this definition. Although the term "laborer" had been defined by the time of this case, the court never mentioned it. And although the court said that "an entity which takes upon itself the legal responsibilities of an *employer* is entitled to a mechanic's lien and related remedies if it furnishes the labor of its employees to a work of improvement" (*id.* at p. 162), it never characterized such an entity as a "laborer" itself. It instead said this type of an entity would be covered under the mechanics' lien law as then written, which covered, among others, " 'all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams, or power contributing to a work of improvement.' " (*Id.* at pp. 158-159.) But the mechanics' lien law has not used this language in over a decade. (See Stats. 2010, ch. 697, § 20 [adding § 9100].) And while an employer that bestows labor may have been considered a "person[] . . . bestowing skill or other necessary services" under this prior law, it is not a "laborer" within the meaning of section 8024, subdivision (a) today.

In rejecting K&S's position, we emphasize that our decision is a narrow one and focused on the arguments tendered. We address only whether K&S can, as it argues, obtain the relief it seeks by characterizing itself as a "laborer" under section 9100. And

6

focusing on the mechanics' lien law as written today, rather than the law as written decades ago, we conclude that it cannot.

## II

### *Payment Bond*

K&S next challenges the trial court's award of attorney fees under section 9564. That statute requires trial courts to award attorney fees to the prevailing party in any "action to enforce the liability on [a] [payment] bond." (§ 9564, subd. (c).) K&S argues this provision is inapplicable here because a payment bond for a state project is not a "payment bond" within the meaning of the mechanics' lien law. That is so, it reasons, because "payment bond" is defined to mean "a bond required by Section 9550" (§ 8030, subd. (b)) and section 9550 does not itself require a payment bond for "state entit[y]" projects like the ones here (§ 9550, subd. (e); Pub. Contract Code, § 7103, subd. (d)). Respondents counter that K&S misinterprets section 9550 and, even if its interpretation were correct, it should be estopped from arguing section 9564 is inapplicable because it earlier claimed the statute was applicable when it sought its own attorney fees. Although we find the statutory definition of "payment bond" inartful, we reject K&S's reading of the law.

As covered above, our fundamental task in matters of statutory interpretation is to determine the Legislature's intent, and to do so, we start with the statutory language itself. When the language is clear, as it is with the term "laborer," this generally describes both the start and end of our analysis. But our analysis is more searching when the statutory language permits more than one reasonable interpretation. In that circumstance, we may also consider other interpretive aids, including the statute's purpose, legislative history, and public policy. (*Brennon B. v. Superior Court, supra*, 13 Cal.5th at p. 673.) And even when the statutory language permits only one interpretation, we "need not follow the plain meaning of a statute when to do so would 'frustrate[] the

7

manifest purposes of the legislation as a whole or [lead] to absurd results.' " (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.)

Starting with the statutory text here, section 8030 defines "payment bond" to mean "a bond required by Section 9550." (§ 8030, subd. (b).) Section 9550, in turn, is one of two provisions relevant to this case that requires a payment bond for public works contracts. The other is Public Contract Code section 7103. Section 9550 covers most public entities and requires a payment bond for public works contracts involving expenditures over $25,000. (§ 9550, subd. (a); see also § 8036 [defining public entity].) But it includes an exemption if the contract is with any of the state entities identified in Public Contract Code section 7103 (§ 9550, subd. (e))—which is to say, it exempts from its coverage contracts with "every state office, department, division, bureau, board, or commission" (Pub. Contract Code, § 7103, subd. (d)). Public Contract Code section 7103 itself covers these state entities and, similar to section 9550, requires a payment bond for public works contracts involving expenditures over $25,000. (Pub. Contract Code, § 7103, subds. (a), (d).)[3]

Considering the text of these statutes alone, we acknowledge that K&S's position has some persuasive force. A "payment bond," after all, is defined to mean a bond required under section 9550 (§ 8030, subd. (b)), and section 9550 did not itself require a bond for the contracts here. Public Contract Code section 7103 instead imposed this

---

[3] The State Contract Act (Pub. Contract Code, §§ 10100-10285.5) is another statute that requires payment bonds for certain public works contracts. It requires the filing of both a performance bond and a payment bond for certain state projects involving expenditures over, as of 2023, $388,000. (*Id.*, §§ 10101-10103.5 [describing some exceptions], 10105 [defining "project" to be a state work of improvement with a total cost over $250,000, subject to adjustments from the Director of Finance], 10221 [requiring bond]; Dept. of Finance Budget Letters, Budget Letter 22-01 (Jan. 26, 2022) <https://dof.ca.gov/wp-content/uploads/sites/352/budget/budget-letters/BL-22-01.pdf> [as of Jan. 2, 2024], archived at: <https://perma.cc/5TUY-66RT> [adjusting project amount to $388,000].)

requirement, as these contracts were with a state entity, Caltrans, covered in this statute rather than section 9550. (Pub. Contract Code, § 7103, subds. (a), (d); see § 9550, subd. (e).) It thus follows, the argument goes, that the payment bonds here are not "payment bonds" within the meaning of the mechanics' lien law, and so the attorney fee provision in section 9564 for actions to enforce the liability on a payment bond is inapplicable—as are all or part of the 15 other statutes in the relevant portion of the mechanics' lien law that reference or concern a payment bond. (See §§ 9100, 9300-9306, 9414, 9452, 9550-9564.)

But considering the statutory scheme as a whole, the relevant legislative history, and the absurd consequences that would follow from K&S's reading, we conclude that this is not the meaning the Legislature intended. We begin with the broader statutory scheme, along with some historical context. The requirements for a payment bond have long been a key part of the mechanics' lien law, and these requirements have historically applied to state projects. In 1971, for instance, the mechanics' lien law covered contracts with a "public entity"—a term defined to include "the state" (Stats. 1969, ch. 1362, § 2, p. 2759)—and for those contracts involving expenditures over a specified amount, it required a "payment bond"—a term defined in general terms to mean "a bond . . . which is conditioned for the payment in full of the claims of all claimants and which also by its terms is made to inure to the benefit of all claimants" (*id.*, p. 2756; see also *id.*, §§ 6-7, pp. 2777-2779 [describing payment bond requirements]; *id.*, § 11, p. 2783 [listing effective date of 1971]). This definition for "payment bond" remained largely unchanged for the next 40 years. (See Stats. 1994, ch. 974, § 2, p. 5688 [slightly modifying definition].) And although the Legislature revised it in 2010 to its current form, the Legislature declared in the act enacting this change that the "act [wa]s intended to be nonsubstantive in effect," except for certain specified statutes irrelevant here. (Stats. 2010, ch. 697, § 107, p. 3905.)

9

Still today, the mechanics' lien law purports to apply to public works contracts with state and other public entities. The law, indeed, explicitly declares that the portion covering public works of improvement—division 4, part 6, title 3 of the Civil Code (title 3)—applies to all "work[s] of improvement contracted for by a public entity" (§ 9000), with "public entity" defined, as in 1971, to include "the state" (§ 8036). This title includes 16 statutes referencing or concerning payment bonds, including statutes describing the form of the payment bond (see, e.g., §§ 9552-9554), identifying those having rights to make a claim against the bond (§ 9100), and describing the procedures for making a claim against the bond (see, e.g., §§ 9558-9560). And while section 9550 of this title explicitly exempts "state entity" projects from its requirements for a payment bond, no similar provision explicitly exempts these projects from all the mechanics' lien law's requirements for payment bonds.

Considering the statutory scheme as a whole, together with this historical context, we find the Legislature had no intent to exempt state projects from all these requirements covering payment bonds. Exempting these projects, to start, would be inconsistent with the Legislature's general intent to have title 3 apply to all works of improvement contracted for by a "public entity" (§ 9000)—a term, again, defined to include "the state" (§ 8036). It would also be a major departure from the historical application of the mechanics' lien law's payment bond provisions to state projects, even though the Legislature provided no mention of an intent to undertake this change when it amended the term "payment bond" in 2010. Had the Legislature in fact intended to make this change—a change that would alter the fundamental details of the mechanics' lien law— we would have expected a clearer indication of this intent. (See *Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118, 1135 [doubting that the Legislature intended a major change in the law when it made a "subtle" change]; *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1171 [finding similarly].) But rather than evince this intent, the Legislature declared that the act amending "payment bond" to

10

its current form was "intended to be nonsubstantive in effect," except, again, for certain specified statutes irrelevant here. (Stats. 2010, ch. 697, § 107, p. 3905.)

The legislative history for the bill adding the current definition of "payment bond," moreover, confirms that the bill was not intended to effect the change that K&S envisions. The Legislature added this definition following a recommendation from the California Law Revision Commission (the Commission). (See Recommendation: Mechanics' Lien Law (Feb. 2008) 37 Cal. Law Revision Com. Rep. 527 (2007).) Although the Commission proposed amending the definition of "payment bond" to the general form it takes today (*id.*, pp. 736, 777), it emphasized that it "d[id] not propose radical changes to the operation of the existing construction law remedies," let alone one that would exclude state projects from all the mechanics' lien law's payment bond provisions (*id.*, p. 530). The Commission also, after discussing the various provisions covering payment bonds for state projects, explained that its proposal "preserves the status quo . . . in a more understandable fashion." (*Id.*, p. 602, fn. omitted.) Consistent with the Commission's characterization of its proposed revisions, legislative committee analyses afterward described these revisions—including those to the payment bond—as "modest." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 189 (2009-2010 Reg. Sess.) as amended June 2, 2010, p. 6; Assem. Com. on Appropriations, Analysis of Sen. Bill No. 189 (2009-2010 Reg. Sess.) as amended Aug. 2, 2010, pp. 1-2.) All this demonstrates that the "payment bond" revisions were meant to leave the prior scheme for payment bonds largely intact, not to effect a radical change entirely exempting state projects from the mechanics' lien law's provisions on payment bonds.

Consideration of absurd consequences also cuts against K&S's position. Under K&S's interpretation, payment bonds for state projects would not be covered under the mechanics' lien law at all; they would instead, K&S asserts, be covered under Public Contract Code section 7103. But Public Contract Code section 7103 does not identify who can make a claim against the payment bond, nor does it describe the procedures for

11

making a claim against the bond. The mechanics' lien law instead provides these details, as it has since Public Contract Code section 7103 was initially enacted in 1985. (See Stats. 1985, ch. 678, § 2, p. 2273.) And so while Public Contract Code section 7103 requires a payment bond for certain state projects, the evident purpose of this requirement would be defeated without the provisions of the mechanics' lien law. The mere act of obtaining a payment bond, after all, serves little purpose if unpaid parties have no right to assert a claim against the bond. Accepting K&S's position, then, would render payment bonds for state projects covered under Public Contract Code section 7103 largely meaningless—an absurd result that the Legislature plainly never intended.

The legislative history for Public Contract Code section 7103 further demonstrates that it was never intended to be, as K&S would have it, a stand-alone provision on payment bonds. Before the statute's enactment, both state entities and other public entities were covered under the same provision in the mechanics' lien law that required a payment bond for contracts involving expenditures over a certain amount. (Stats. 1980, ch. 293, § 1, p. 619.) But in 1985, the Legislature distinguished between the two. Under the 1985 amendment, for most public entities, the requirement for a payment bond would be triggered when the contract involved an expenditure over $25,000. (Stats. 1985, ch. 678, § 1, p. 2273.) But for the state entities described in the then-newly added Public Contract Code section 7103, the requirement would instead be triggered when the contract involved an expenditure over $5,000. (Stats. 1985, ch. 678, § 2, p. 2273.) As this amendment suggests and as the legislative history confirms, this bill was not intended to exempt these state entities from the mechanics' lien law's general requirements covering payment bonds. It instead served to lower the expenditure amount required to trigger the bond requirement for state projects and thereby provide added protections to those working on these projects. (See Assem. Consumer Protection Com., Analysis of Assem. Bill No. 2406 (1985-1986 Reg. Sess.) as introduced Mar. 8, 1985, p. 2 [noting that the bill author proposed the amendment because "subcontractors and materials

12

suppliers sometimes fail to receive payment from their general contractor on state projects of $25,000 or less"].)[4]

Taking all these considerations together, we conclude that title 3's general payment bond requirements—including the attorney fee provision in section 9564— apply both to state projects that require a bond under Public Contract Code section 7103 and other "public entity" projects that require a bond under section 9550. Our conclusion in this respect is consistent with a prominent practice guide on the mechanics' lien law, California Mechanics' Liens and Related Construction Remedies (Cont.Ed.Bar 4th ed. 2022). That guide explains that payment bonds for public works contracts are required by section 9550, Public Contract Code section 7103, and the State Contract Act, and, without distinguishing between these payment bonds, states that "[p]ayment bonds for public works are governed by [Civil Code] §§ 9550-9566." (Cal. Mechanics' Liens and Related Construction Remedies (Cont.Ed.Bar 4th ed. 2022) § 10.18.) We need not address whether this holds true for payment bonds required under the State Contract Act, a topic not covered in the parties' briefing. But we agree title 3's general requirements for payment bonds apply for bonds required under both section 9550 and Public Contract Code section 7103. In reaching this conclusion, we again acknowledge that our reading strays from the plain language of section 8030's definition of "payment bond." But for the reasons covered, we find this to be one of those rare cases where it is necessary to depart from a statute's plain language. (See *California School Employees Assn. v. Governing Board, supra*, 8 Cal.4th at pp. 335-336, 346 [construing a statute establishing

---

[4] The Legislature has since raised this expenditure amount to $25,000. (Stats. 2008, ch. 79, § 1.) According to the author of the bill making this change, the raised expenditure amount "will help improve small business participation in small dollar public works contracts . . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 3024 (2008-2009 Reg. Sess.) as amended Apr. 15, 2008, p. 3.)

a holiday for "every day appointed by the President . . . for a public fast, thanksgiving or holiday" to mean every day so appointed and intended to be treated as a federal holiday].)

## DISPOSITION

The judgment and attorney fee award are affirmed.  VSSI and Western are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

_____/s/_____
BOULWARE EURIE, J.

We concur:

_____/s/_____
HULL, Acting P. J.

_____/s/_____
MESIWALA, J.